Judith A. COSTELLO, Plaintiff,

v.

MASSACHUSETTS REHABILITATION COMMISSION, Warren L. McManus, Elmer C. Bartels, and Nancy F. Earsy, Defendants.

No. C.V. 94–10552–NG.

United States District Court, D. Massachusetts.

Oct. 15, 1997.

George E. Kersey, Lynnfield, MA, for Plaintiff.

Howard Meshnick, Atty. General's Office, Boston, MA, for Defendants.

## 62

## ORDER

GERTNER, District Judge.

Notwithstanding the filing of an untimely opposition, this court considered the pleadings. This report and recommendation is adopted.

SO ORDERED.

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS MASSACHUSETTS REHABILITATION COMMISSION, ELMER BARTELS, WARREN McMANUS, AND NANCY EARSY'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 27)

KAROL, United States Magistrate Judge.

With the dispute between plaintiff, Judith A. Costello ("Costello"), and her employer, defendant Massachusetts Rehabilitation Commission ("MRC"), entering its third decade, and notwithstanding that Costello received all the relief available to her on her federal claims even before this lawsuit was commenced, Costello is claiming in this lawsuit that the MRC and three of its agents, acting in their official capacities (collectively, "Defendants"), retaliated against her in 1988 for filing a sex discrimination claim against the MRC in 1977. Defendants have moved for summary judgment on several grounds, including the absence of any probative evidence to support the charge of retaliation. I recommend that the motion be **ALLOWED.**

1. Unless otherwise noted, facts stated below are either undisputed or stated in the light most favorable to Costello, the party opposing the motion for summary judgment.

2. Although Costello claims that, under the settlement agreement, she "was promoted retroactively with back pay," I see nothing in the settlement agreement to support Costello's assertion that she was promoted pursuant to it, retroactively or otherwise. (Declaration of Plaintiff Judith A. Costello in Opposition to the Motion for Summary Judgment ("Pl.'s Dec. Opp. to Def.'s Mot. Summ. J.") ¶14, Docket No. 37.) She may, however, have received the promotion she was seeking pursuant to an award in a labor arbitration she had commenced around the same time.

3. Costello goes on to assert in the same paragraph of her Declaration that, at the same time that Ms. Willett was giving her an "overall good

## I. FACTUAL BACKGROUND [1]

Costello began her employment with the MRC in 1972 as a temporary Junior Vocational Rehabilitation Counselor. In response to being turned down for a promotion in 1977, she filed a sex discrimination charge with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"). The matter was settled pursuant to a written settlement agreement in April 1979.[2] In 1980 Costello was given "an overall good appraisal" by her new Area Director, one Lois Willett, notwithstanding that, in Costello's opinion, "the style of writing was open to negative interpretation." (Pl.'s Dec. Opp. to Def.'s Mot. Summ. J. ¶ 15, Docket No. 37.)[3] Costello's appraisal was "overall satisfactory" in 1981 and 1982 (although, according to Costello, Mr. Lucas "objected that all ratings were too high"), but in 1982 and 1983 Ms. Willett "became irrational and confrontational to all staff" and gave her "a very negative evaluation which did not accurately reflect [her] performance." (Id. at ¶¶ 16, 17.) Between October 1983 and July 1984, Costello was passed over on three separate occasions for permanent Civil Service status, and she regarded at least the July 1984 action as a form of "retaliation on account of ... prior activities." (Id. at ¶¶ 18–20.) She then filed charges of retaliation with the MCAD and EEOC, among other agencies, (Amended Complaint ¶ 11, Docket No. 24), and, within a year, she received Civil Service status.[4] In

appraisal," one Raymond Lucas, who was then Regional Director (and presumably, therefore, Ms. Willett's supervisor), "was advocating the use of negative comments, not as a true assessment, but as a mechanism to provide management with an option to demote or discipline." (Pl.'s Dec. Opp. to Def.'s Mot. Summ. J. ¶ 15, Docket No. 37.) Even if there were factual support for the assertion about what Mr. Lucas was advocating, and there is none, there is no support whatsoever for Costello's claim that Mr. Lucas's advocacy was based upon anything other than a good faith assessments of Costello's performance and capabilities, let alone that it was based on a retaliatory motive.

4. Costello says she received Civil Service status in August 1985 (Pl.'s Dec. Opp. to Def.'s Mot. Summ. J. ¶ 28, Docket No.37); Defendants say she received it in October 1985 (Affidavit of Earle

March and May 1989, respectively, the EEOC and MCAD dismissed these charges for lack of probable cause and notified Costello of her right to bring suit within 90 days (in the case of the EEOC matter) and appeal (in the case of the MCAD matter). (Defendants, Massachusetts Rehabilitation Commission, Nancy Earsy, Bartels and McManus' Memorandum in Support of Their Motion for Summary Judgment ("Defs.' Memo. in Supp. Mot. Summ. J."), Exhibits B and C, Docket No. 28.) She did neither, unless Costello deems the present lawsuit, commenced five years later in 1994, to be her response to those notices.

From 1985 through 1987, Costello received "above average and outstanding" performance appraisals, and the office in which she worked "experienced harmony and high productivity." (Pl.'s Dec. Opp. to Def.'s Mot. Summ. J. ¶ 29, Docket No. 37.) This Golden Era ended abruptly in March 1988 when, for some undisclosed reason, Costello's new Area Director, Dorothy Johnson ("Johnson"), "lost her temper during a meeting with [Costello] and threw her appointment book at [her], narrowly missing [her] face." (*Id.* at ¶ 30.) The record reveals no connection between this incident (or, for that matter, Johnson) and the charges Costello had filed against the MRC in 1977 and again in 1984. Indeed, the record reveals that, during the first nine months of 1988, Costello and Johnson disagreed about numerous matters *other* than Costello's prior MCAD and EEOC charges, including the office smoking policy, client treatment issues, and Costello's right to be absent from the office to participate in a training program. (Deposition of Judith Costello ("Costello Dep.") at 116–119, 136–138, 153, Defs.' Memo. in Supp. Mot. Summ. J., Ex. D, Docket No. 28.) As a result of her confrontations with Johnson, Costello began suffering from various stress disorders, from which she continues to suffer. (Pl.'s Dec. Opp. to Def.'s Mot. Summ. J. ¶ 30, Docket No. 37.) She also filed numerous labor grievances against Johnson through the offices of her union. (Costello Dep. at 165, Defs.' Memo. in Supp. Mot. Summ. J., Ex. D,

Docket No. 28; Pl.'s Dec. Opp. to Def.'s Mot. Summ. J. ¶ 33, Docket No. 37.)

The incident on which the present lawsuit is based occurred in November 1988. On the recommendation of the same Johnson who had thrown her appointment book at Costello the preceding March, Costello and a male employee were both demoted and transferred. (Amended Complaint ¶ 18, Docket No. 24; Costello Dep. at 160–161, Defs.' Memo. in Supp. Mot. Summ. J., Ex. D, Docket No. 28; Defs.' Memo. in Supp. Mot. Summ. J. ¶ 23, Ex. E, Docket No. 28.) Costello then amended an existing unfair labor grievance to include the allegation that her demotion and transfer were in retaliation for her filing an unfair labor practice complaint. (Costello Dep. at 168, Defs.' Memo. in Supp. Mot. Summ. J., Ex. D, Docket No. 28.) On December 9, 1988, Costello filed a charge with the EEOC and MCAD contending that the same November 1988 demotion was "in retaliation because I filed a sex discrimination complaint against my current employer back in 1977, and successfully got promoted into the position." (Defs.' Memo. in Supp. Mot. Summ. J. at 1, Ex. F, Docket No. 28.) She also claimed that the demotion was "because of my handicap (urticaria, angeoedema)." (*Id.*) In addition, Costello filed a grievance with the Massachusetts Office of Civil Rights ("OCR"). (Defs.' Memo. in Supp. Mot. Summ. J., Ex. G, Docket No. 28.) Through some combination of 1) a voluntary agreement entered into in August 1989 and 2) an action by the Massachusetts Labor Relations Commission ("MLRC") in February 1991 responding to yet another grievance which Costello's union had filed on her behalf in August 1990, Costello was reinstated to her former position. (Defs.' Memo. in Supp. Mot. Summ. J., Ex. H, Docket No. 28; Pl.'s Dec. Opp. to Def.'s Mot. Summ. J. ¶ 38, Docket No. 37.) In addition, she received back pay (plus interest), a full restoration of her benefits, and reimbursement for her travel expenses (although not for her additional travel time), all prior to the commencement of this lawsuit. (Defendants, Massachusetts Rehabilitation Commission, Elmer Bartels, Warren McManus and Nancy Ear-

P. MacLeod at 1, Ex. 1, Docket No. 33). The

difference in dates is not material.

sy's Supplemental Exhibits in Support of Their Motion for Summary Judgment ("Defs.' Exhibits in Supp. Mot. Summ. J."), Ex. 3, Docket No. 33; Affidavit of Warren McManus, Defs.' Memo. in Supp. Mot. Summ. J., Ex. I, Docket No. 28; Response of Judith Costello to Exhibits of Defendants, Massachusetts Rehabilitation Commission, Elmer Bartels, Warren McManus and Nancy Earsy, Which Do Not Support Their Motion for Summary Judgment ¶¶ 7, 9–11, Docket No. 34.) Also, Costello did not lose any Civil Service seniority during the period of her demotion, (Affidavit of Earle P. MacLeod at 1, Defs.' Exhibits in Supp. Mot. Summ. J., Docket No. 33.)[5] Despite having prevailed before the MLRC, Costello commenced the present lawsuit in March 1994, in which she contends that the same conduct that was determined by the MLRC to have been in retaliation for labor activity undertaken in 1988 was actually in retaliation for her filing, in 1977, a charge of sex discrimination.

## II. *PROCEDURAL HISTORY*

Costello's original complaint was twelve, single spaced pages, contained sixty-six paragraphs of allegations, and named the MRC and six individuals as defendants. Despite, or perhaps because of, its length, it was difficult to know what Costello's grievance was and whether she was suing the individuals in their personal or official capacities. All the individual defendants moved to dismiss. (Defendants Warren L. McManus, Elmer C. Bartels, Warren Catalucci, Nancy F. Earsy and Albert Jones, Jr.'s Motion to Dismiss, Docket No. 6; Defendant, Dorothy Johnson's Motion to Dismiss, Docket No. 13.) At a hearing on those motions held on March 28, 1995, Costello indicated that she intended to amend her complaint in response to some of the defects that defendants had cited. In April, she filed a Motion for Leave to Amend the Complaint (Docket No. 16), to which the individual defendants filed an opposition in

May (Defendants McManus, Bartels, Catalucci, Earsy, Johnson and Jones Opposition to Plaintiff's Motion for Leave to Amend to Complaint, Docket No. 19). Since Costello did not need leave of court to file the amended complaint, the court accepted it for filing and, by agreement of the parties, treated defendants' opposition as a motion to dismiss. (*See* Order Regarding Motion for Leave to Amend the Complaint (Karol, U.S.M.J.), dated 5/03/96 ("Order Regarding Mot. to Amend"), Docket No. 23.) Also by agreement of the parties, Count I of the Amended Complaint, which included Costello's retaliation claims, was deemed to be filed only against the MRC and three of the six original individual defendants: Elmer C. Bartels, Warren L. McManus, and Nancy F. Earsy. (*Id.*) Further, Costello confirmed that she was suing those individuals in Count I only in their official capacities. (*Id.*) Taking the foregoing into account, I recommended denial of the motion to dismiss as to Count I, and the court adopted that recommendation. (Order Regarding Mot. to Amend, Docket No. 23, *adopted*, (Gertner, U.S.D.J.), dated 7/24/96, Defs.' Exhibits in Supp. Mot. Summ. J., Ex. 3, Docket No. 33.)

Count II of the Amended Complaint purported to assert civil rights violations. At a hearing, on May 2, 1996, Costello confirmed that the purported civil rights violations consist of defendants' continuing failure to abide by a remedial order that had been entered by the MLRC after it had found that Costello had been demoted and transferred in retaliation for her having engaged in protected labor activity. (*See* Order Regarding Mot. to Amend at 2 n. 1, Docket No. 23.) Specifically, Costello claims that, in violation of the MLRC order, she has not been paid for the additional time it took her to commute to the more distant location to which she had been transferred and that the MRC has not posted in the proper location a notice that MLRC had ordered it to post.[6] Because state law

---

5. Costello contends, however, that the current Area Director, a woman named Carolyn Langevin ("Langevin"), has continued to harass her since 1991. (Pl.'s Dec. Opp. to Defs.' Mot. Summ. J. ¶¶ 38–45, Docket No. 37.) There is no apparent connection between Langevin and the charges Costello filed in 1977, 1984, and 1988, and, as far as the record reveals, Costello has not

filed a charge with the MCAD or EEOC in connection with the alleged harassment by Langevin.

6. The MLRC's order does not mention travel time. It orders the Commonwealth of Massachusetts to reinstate Costello to her former position and to make her "whole for any loss of benefits

provided a means of enforcing such orders, I recommended that the motion by the individual defendants to dismiss Count II be allowed (*id.*), and the court adopted this recommendation as well. This left the MRC (which had not filed a motion to dismiss) as the only defendant charged in Count II. The remaining three counts of the Amended Complaint were for common law torts under state law—intentional interference with advantageous contractual relations; intentional interference with marital relations; and intentional infliction of distress.

Following discovery, all Defendants moved for summary judgment on the surviving claims, consisting of retaliation claims against the MRC and the three individual defendants (but only in their official capacities) (Count I); a "civil rights" claim that charges the MRC with a failure to abide by an order of the MLRC (Count II); and state tort claims against various individual defendants (Counts III, IV, and V). . (*See* Defendants Massachusetts Rehabilitation Commission, Elmer Bartels, Warren McManus and Nancy Earsy's Motion for Summary Judgment, Docket No. 27.) [7] Defendants based their motion on five grounds: (1) Costello failed to make a prima facie case of retaliation; (2) Costello suffered no damages compensable under Title VII; (3) Title VII does not reach claims of handicap discrimination; (4) the MRC, being a state agency, is not a "person" subject to suit pursuant to 42 U.S.C. § 1983; and (5) the intentional tort claims are barred because, absent a viable federal claim, there is no pendent jurisdiction. (*Id.*) There is no need to consider the second, third, or fifth grounds in detail, because the first and fourth are dispositive of the remaining federal claims, and, once the federal claims are dismissed, a sound exercise of discretion permits dismissal of the pendant state claims as well. *See* 28 U.S.C.A. § 1367(c)(3) (West 1993).

## III. ANALYSIS

### A. Summary Judgment Standard

The standard for summary judgment is familiar. Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). At the outset, the moving party must aver that there is an absence of evidence to support the non-moving party's position. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). To avoid summary judgment, the opposing party must produce affirmative evidence demonstrating a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317. 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "[T]he nonmovant may not rest upon mere allegations, but must adduce specific provable facts demonstrating that there is a triable issue." *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989). While summary judgment should be used sparingly where motive, intent, or state of mind are at issue, it is nevertheless available where plaintiff "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). In reviewing the nonmovant's case, "the court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party," *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983); *see Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989), subject, nevertheless, to the caveat that the court "must disregard improbable or overly attenuated inferences, unsupported conclu-

and wages." (Defs.' Exhibits in Supp. Mot. Summ. J., Ex. 2, Docket No. 33.) There is no evidence that Costello's "benefits and wages" ever included compensation for commuting time to any location, and it is undisputed that, even before this action was commenced, Costello had been reinstated, had been paid back pay (with interest), had had her benefits restored, and had been reimbursed for travel expenses.

7. In her memorandum in opposition to Defendants' motion, Docket No. 31, Costello claims that Defendants have not yet provided complete responses to her discovery requests. I give no weight to this claim, because, to this date, Costello has not particularized her claim or filed a motion to compel or for a continuance pursuant to Fed.R.Civ.P. 56(f).

sions, and rank speculation." *Abbott v. Bragdon,* 107 F.3d 934, 938 (1st Cir.1997).

### B. *Retaliation*

Count I of Costello's Amended Complaint appears to seek relief for actions allegedly taken by Defendants against Costello both as a result of her disability and in retaliation for her filing a complaint against the MRC in 1977 for sex discrimination. Also, the EEOC and MCAD charges that Costello filed against the MRC in December 1988 appear to include a claim of handicap, as well as sex, discrimination. (Defs.' Memo. in Supp. Mot. Summ. J., Ex. F, Docket No. 28.) At oral argument on Defendants' motion, however, Costello explained that the only claim she is making related to her disability is that the disability was itself induced by the stress associated with the MRC's retaliation against her for filing a claim of sex discrimination in 1977. In other words, Costello is not claiming that defendants retaliated or otherwise discriminated against her because of her disability; rather, she is claiming that the retaliation caused her to become disabled, and, therefore, that her disability is an element of the damages she is entitled to recover for the retaliation. In light of this explanation, Costello's disability claim need not be considered further if her retaliation claim is determined to be without merit.

Turning to the retaliation claim, Title VII provides, in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... under this subchapter.

42 U.S.C.A. § 2000e–3(a) (West 1994). Where, as here, there is no direct evidence of retaliation, a party may seek to establish its claim by resorting to the familiar burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 793, 802–804, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *E.g., Fennell v. First Step De-*

*signs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996). To establish a prima facie case for retaliation under that framework, Costello must show that: (1) to Defendants' knowledge, she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse employment action. *See id.* If she carries this relatively light burden, the burden of production shifts to defendants to present a legitimate, nonretaliatory reason for the adverse employment action. If Defendants do so, Costello must carry the ultimate burden of showing that the reason given is a pretext for retaliation. *See id.*

■ In this case, Costello easily satisfies the first two elements of her prima facie case: she filed a claim of sex discrimination against the MRC in 1977 and suffered adverse employment action in the form of a demotion and transfer in 1988. As discussed below, however, there is no evidence of a causal connection between these two events.[8] Thus, her claim must be dismissed.

■ Where direct evidence of a causal connection between protected activity and adverse employment action is lacking, a plaintiff may attempt to make the connection through circumstantial evidence, typically by showing that the adverse employment action occurred shortly after the plaintiff engaged in protected activity. *E.g., Fennell,* 83 F.3d at 535–36; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 110 (1st Cir.1988). That is certainly not the case here, where the two events were separated by eleven years. Even if the court were to consider the adverse employment action that Costello says was taken against her in 1984 in retaliation for her action in 1977, a seven-year gap would still exist, and that is too long an interval to support an inference of retaliation. Indeed, the existence of a three to four year interlude of peace and harmony between the retaliatory action allegedly taken in 1984 and the further retaliatory action allegedly taken in 1988 diminishes even further whatever

---

8. Indeed, the evidence is to the contrary, to the extent Costello successfully argued to the MLRC that the adverse employment action taken against her and a male co-worker in 1988 was in retaliation for her and his having engaged in protected labor activity.

evidentiary significance the events of 1984 might have had.[9]

In Another way that a plaintiff may establish that an action taken against her was retaliatory is to compare herself to an otherwise similarly situated person who did *not* suffer the same adverse employment action she did. Here, Costello has not done so. In fact, the record establishes that another individual contemporaneously suffered the identical adverse employment action as Costello did, and that individual was a male who, as far as the record reveals, had never charged the MRC with violating Title VII. What Costello and that individual had in common was that both had filed non-Title VII labor grievances against the MRC and both had successfully charged that the demotions and transfers that followed right on the heels of those filings were in retaliation for their having done so.[10]

In In lieu of direct or probative circumstantial evidence of retaliation, Costello relies on unsupported speculation and arguments in making her claim that, because her job performance was above reproach, the only inference that can be drawn is that she was being retaliated against in 1988 for the charge she had filed in 1977.[11] This is simply not enough. For example, in *King v. Hanover,* the plaintiff "produced depositions and affidavits of witnesses to challenge the appropriateness of the disciplinary action" taken

against him. *King v. Hanover,* 116 F.3d 965, 968 (1st Cir.1997) This was far more than Costello has done here. Nevertheless, the court held that "evidence contesting the factual underpinnings of the reasons for the discipline, without more, is insufficient to present a jury question regarding the retaliation claim." *Id.* Similarly, in *Hoeppner v. Crotched Mountain Rehab. Center, Inc.,* plaintiff attempted to establish the existence of defendant's retaliatory motive by presenting evidence that the complaints against her were untruthful, inaccurate, and fabricated. *Hoeppner v. Crotched Mountain Rehab. Center, Inc.,* 31 F.3d 9, 17 (1st Cir.1994). The court held, however, that plaintiff could not "establish that [the defendant's] reasons for discharging her were merely a pretext for impermissible retaliation 'solely by contesting the objective veracity of [the employer's] action.'" *Id., citing Morgan v. Mass. General Hosp.,* 901 F.2d 186, 191 (1st Cir.1990).

Because there is no direct or probative circumstantial evidence that any defendant retaliated against Costello for her filing a claim of sex discrimination against the MRC in 1977, I recommend that defendants' motion for summary judgment regarding Count I of the Amended Complaint be allowed.

## C. Civil Rights

In The MRC, indisputably a state agency, is the only remaining defendant named in

9. Defendants also point out that Costello was given an opportunity by the MCAD and EEOC in 1989 to bring suit on the retaliation claim she had filed in 1984 and that she failed to do so. Since too much time had already passed by 1984 to support an inference of retaliation for actions taken in 1977, I need not reach the vexing question of whether a time-barred claim of retaliation may be used as a stepping stone to establish that an unrelated adverse employment action taken four years later was also retaliatory. *See, e.g., DeNovellis v. Shalala,* 124 F.3d 298, 309 n. 5 (1st Cir.1997) (past acts of discrimination, though themselves time-barred, *"may* constitute relevant background evidence and therefore *may* be admissible at trial") (emphasis added).

10. Similarly, Costello maintains that her supervisor, Lois Willett, "became irrational and confrontational to all staff," i.e., not just toward Costello, in 1982 and 1983, and that this provoked Costello to file a grievance. It was shortly after Costello filed this labor (i.e., non-Title VII)

grievance that she was first passed over for Civil Service status. (Pl.'s Dec. Opp. to Defs.' Mot. for Summ. J. ¶¶ 17–18, Docket No. 37.)

11. For example, Costello alleges in Paragraph 15 of her Declaration, with no support whatsoever, that "Regional Director Raymond Lucas was advocating the use of negative comments [about Costello], not as a true assessment, but as a mechanism to provide management with an option to demote or discipline." (Pl.'s Dec. Opp. to Defs.' Mot. Summ. J., ¶ 15, Docket 37.) Continuing in the same vein, she claims in Paragraph 17 that she was "given a very negative evaluation which did not accurately reflect [her] performance." Similarly, in Paragraph 20, she states that, despite her high exam score and years of service, defendant McManus notified her in July 1984 that she would not be receiving Civil Service status in her present position. She then asserts that "the action by McManus must be regarded as retaliation on account of my prior activities."

68

Count II, which alleges a violation of Costello's civil rights. As the MRC points out, states and their agencies are not "persons" subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989) (holding that "a State is not a person within the meaning of § 1983"). Costello's only written response is that "the concept of 'person' should be liberally construed in order to do justice, and could be extended to include organizations." (Memorandum in Opposition to the Motion For Summary Judgment of Defendants, Massachusetts Rehabilitation Commission, Elmer C. Bartels, Warren L. McManus and Nancy F. Earsy, Counter–Statement of the Case ("Pl.'s Counter–Statement") at 7, Docket No. 31.) At oral argument, Costello's counsel conceded that, under *Will*, the MRC is not a "person" subject to suit under § 1983, but he maintained that *Will* was wrongly decided and that even the Supreme Court can change its mind. While *Will*, like any Supreme Court decision, can be overruled by the Supreme Court, it is still good law and must be followed. Accordingly, I recommend that Defendants' Motion for Summary Judgment be allowed as to Count II.

### D. *Pendent Claims*

■ Defendants argue that, once the federal claims are dismissed, the court has no choice but to dismiss the pendent state claims. (Defs.' Memo. in Supp. Mot. Summ. J. at 17, Docket No. 28.) This is not the law. *See Roche v. John Hancock Mutual Life Ins. Co.*, 81 F.3d 249, 256–257 (1st Cir.1996). In *Roche*, a plaintiff whose § 1983 claim had been dismissed on a motion for summary judgment argued that, at that point, the district court no longer had jurisdiction over the supplemental state claims that plaintiff had also filed. *Id.* at 256. The court, citing 28 U.S.C. § 1367(c)(3), disagreed, stating, "[i]n a federal-question case, the termination of the

foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." *Id.* at 256–257.[12]

■ Perhaps defendants mean to argue that the court must dismiss the pendent state claims because the federal claims have not only been determined to be without merit, but that they never were "substantial" within the constitutional sense in which that term was used in cases such as *United Mine Workers v. Gibbs* and *Newman v. Burgin*. *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991) (holding that the "power of a federal court to hear and to determine state-law claims in nondiversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit"), *citing United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). If so, they may be correct, since Costello's federal civil rights claim, from the day it was commenced, was clearly defective as a matter of law and, as Costello must have known, there was never a scintilla of evidence to support her federal Title VII claim. Rather than get into fine questions, however, about whether Costello's federal claims were insubstantial in a constitutional sense or just exceptionally weak, I recommend that the court dismiss the pendent claims as an exercise of its discretion. This would be appropriate not just because the federal claims bordered on the frivolous all along, but because it was, or should have been, clear that even if they were meritorious, there was no further relief that the court could have granted on them, since all the conduct on which they were based occurred before November 21, 1991. *See Landgraf v. USI Film Products*, 511 U.S. 244, 251, 281–295, 114 S.Ct. 1483, 1490, 1506–1508, 128 L.Ed.2d 229 (1994) (remedies available under Title VII for harm occurring prior to date of amendment of Title VII,

---

12. At least equally mistaken is Costello's argument that the pendent claims may not be dismissed at this stage because "This issue has been decided in Plaintiff's favor by the prior decision of Magistrate Judge Karol and approved by this Court." (Pl.'s Counter–Statement at 8, Docket No. 31.) The prior decision was on a motion to dismiss, before there had been any discovery and while the federal claims were still in the case. More to the point, the Order explicitly stated that "this recommendation is not intended to preclude defendants from seeking dismissal of those counts at a later time, if circumstances so warrant." (Order Regarding Mot. to Amend at 2, Docket No. 23.)

November 21, 1991, are limited to back pay and other "equitable" remedies); *DeNovellis,* 124 F.3d 298, 308–309 (holding no remedy available under amended provisions of Title VII for violations occurring prior to date of amendment (November 21, 1991), where discriminatory acts did not continue into the post-amendment period).[13]

## IV. SUMMARY AND RECOMMENDATION

For all the foregoing reasons, I recommend that Defendant's Motion for Summary Judgment (Docket No. 27) be **ALLOWED.**

## V. IMPORTANT NOTICE OF RIGHT TO OBJECT AND WAIVER OF RIGHT TO APPEAL FOR FAILURE TO DO SO WITHIN TEN DAYS

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court **WITHIN 10 DAYS** of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation. *See United States v. Valencia–Copete,* 792 F.2d 4, 5–6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980);

---

**13.** I am aware, of course, that Costello contends that the retaliation is continuing right to the present, but nothing ties those further acts of retaliation to the events of 1977, 1984, or 1988. Furthermore, since Costello never filed a charge with the MCAD or EEOC in which those claims were asserted, they are not properly before this court. *See Lattimore v. Polaroid Corp.,* 99 F.3d

*see also Thomas v. Arn,* 474 U.S. 140, 148–149, 106 S.Ct. 466, 471–472, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).

456, 464 (1st Cir.1996) (stating that complainant has not preserved right to assert in litigation claims that are either 1) based on entirely different set of facts than those set forth in charge filed with administrative agency, or 2) not specifically asserted in charge filed with administrative agency).