Aubrey MINER, et al.

v.

CONNLEAF, INC., et al.

Civil Action No. 96–30022–MAP.

United States District Court,
D. Massachusetts.

Dec. 30, 1997.

lowest**50**

Keith A. Minoff, Robinson, Donovan, Madden & Barry, Springfield, MA, for Plaintiffs.

Robert L. Leonard, Doherty, Wallace Pillsbury & Murphy, Springfield, MA, for Defendants.

### MEMORANDUM REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Docket No. 24)

POSNER, District Judge.

### I. INTRODUCTION

Plaintiff Aubrey Miner has brought state and federal age discrimination claims against

his former employer.[1] He charges that in March 1994, Connleaf, Inc. and its owners wrongfully terminated him from his position as a tobacco farm manager in Westfield, Massachusetts, in violation of 29 U.S.C. §§ 21 *et seq.*, ("ADEA") and Mass. Gen. Laws ch. 151B.

Before this court are the plaintiffs' objections to the July 31, 1997 Report of Magistrate Judge Neiman recommending allowance of defendants' Motion for Summary Judgment.

The plaintiffs specifically object to Magistrate Judge Neiman's Report and Recommendation with respect to Miner's state law age discrimination claims, maintaining that the evidence reveals a genuine dispute whether the defendants' proffered reasons for discharging Miner were pretextual. No objection is offered to the Recommendation on the ADEA claim.[2]

After a *de novo* review of the entire record, the court is convinced that it must adopt Magistrate Judge Neiman's Report and Recommendation and allow the defendants' Motion for Summary Judgment.

### II. FACTS

As neither party has objected to Magistrate Judge Neiman's recitation of the facts, the court quotes the facts as they appear in the Report and Recommendation.

Plaintiff began working for the Consolidated Cigar Company ("Consolidated"), one of Connleaf's predecessors, in 1960. In approximately 1981, Casco, Inc. ("Casco") assumed operation of three of Consolidated's farms, one being the Clark Farm in Westfield.

In about 1989, Plaintiff was promoted to the position of manager of the Clark Farm. His direct supervisor was Stanley Pitchko

---

**1.** Plaintiffs Aubrey and Linda Miner have agreed to an entry of summary judgment on their claims for emotional distress and loss of consortium. Thus, Aubrey Miner is the sole remaining plaintiff.

**2.** Defendants have objected to Magistrate Judge Neiman's allowance of plaintiff's Motion to Strike. His ruling was proper and none of the stricken material has been considered in rendering this ruling.

("Pitchko"). In January of 1993, Connleaf assumed ownership of the three farms and agreed to maintain Plaintiff in his managerial position. As a result, Plaintiff came under the supervision of Holloway, Connleaf's President, and Arnold, Connleaf's Vice President.[3] His direct supervisor continued to be Pitchko.

Plaintiff appears to have been successful throughout the bulk of his career. When he was employed by Casco and Consolidated, he received steady raises and promotions. In addition, Plaintiff was told at the time he was hired by Connleaf that he would receive a five percent increase in his annual salary. Moreover, in a letter dated November 29, 1993, Holloway and Arnold informed Plaintiff that he had "made a conscientious effort to assist in operating effectively" during the previous twelve-month period and that Connleaf felt it was appropriate "to recognize that effort" by increasing Plaintiff's salary by three percent and declaring a bonus midway through the tobacco crop cycle.

By the time the 1993 crop cycle ended, however, things had changed. By early 1994, Holloway had observed that the quality of tobacco grown at the Clark Farm was the poorest of the three farms operated by Connleaf and had determined that Defendants had incurred greater expense to operate this farm than their other two farms. These findings, which Holloway ascribed to Plaintiff, were contrary to his expectations. Additionally, Holloway had personal knowledge of incidents of poor performance which he attributed to Plaintiff, including the fact that workers had left the Clark Farm before their shift had ended, that Plaintiff had allowed Connleaf's equipment to be left unsecured and that curing sheds under Plaintiff's control had been found to be dangerously outside the required temperature range.

Without specifically disputing the facts in the previous paragraph, Plaintiff avers that neither Holloway, Arnold nor Pitchko ever communicated with him about employees leaving the farm early, spoke to him (except in one minor instance) about failing to properly secure equipment, gave him negative feedback concerning the quality of tobacco grown at the Clark Farm while he was manager, or told him that costs at the Clark Farm were running too high. In fact, Plaintiff states, "[a]t no time while I was an employee of Connleaf did any member of management including Mr. Holloway, Mr. Arnold or Mr. Pitchko ever speak to me or otherwise communicate to me that the quality of my work was unsatisfactory or criticize the quality of my work in any way." Plaintiff also states that Pitchko (not he) would have decided when to let workers go, that it was Pitchko (not he) who determined when and where to plant, irrigate, harvest and take down the crops, and that "upper management" (not he) controlled the farms' labor costs.

On March 3, 1994, Holloway fired Plaintiff. Upon doing so, Holloway told Plaintiff, "You don't fit into our plans." Although no other reason for the termination was given at the time, Arnold—who apparently was not present at the firing—subsequently testified that Plaintiff "was set in his ways and didn't appear to want to take the direction and change the way I or Stanley [Pitchko] might want to have things done." (Pls.' Opp'n, Exhibit D (Arnold dep.) at 133.) When he was fired, Plaintiff was fifty-six years old.

Connleaf replaced Plaintiff with John Pitoniak ("Pitoniak")—a forty-three year old senior foreman at another farm with five years of experience in the tobacco growing business. Given his more limited experience, Pitoniak was paid less than Plaintiff and had accrued much less vacation time and fringe benefits than had Plaintiff. The quality of the previous year's crop was never discussed with Pitoniak when he was offered Plaintiff's former job. Additionally, after Pitoniak assumed his new position, he was not criticized for leaving staging trucks at a tobacco barn or for failing to maintain proper temperatures in a tobacco shed.

---

3. Although Holloway and Arnold did not formally come into the picture until 1993, in the late 1980s and early 1990s, Holloway was employed by Gallagher, Ltd., a British company which provided financing to Casco. On at least one occasion while at this post, Holloway exchanged greetings with Plaintiff.

Plaintiff filed a charge of age discrimination with the MCAD in April of 1994. After Plaintiff's MCAD complaint was dismissed for lack of probable cause, he instituted this action in state court in December of 1995. The case was thereafter removed to this Court given the existence of a federal question and, on February 21, 1997, Defendants filed the instant motion for summary judgment.

Report and Recommendation (Docket No. 36) at 4–7.

## III. DISCUSSION

While there is no dispute regarding the facts *per se*, counsel do contest the inferences that may be drawn from these facts, and the burden the plaintiff bears to survive summary judgment. Part of this dispute stems from the rather subtle distinction between state and federal case law regarding the burden-shifting paradigm for discrimination cases first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### A. Plaintiff's Burden

Federal courts and courts of the Commonwealth follow the first two components of the three-stage *McDonnell Douglas* analysis for claims brought under Mass. Gen. Laws ch. 151B or the ADEA for age discrimination. *See Wheelock College v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 138–39, 355 N.E.2d 309 (1976). Accordingly, under the first stage of the *McDonnell Douglas* paradigm, both ADEA and chapter 151B plaintiffs carry the initial burden of establishing a *prima facie* case of discrimination.[4] *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Wheelock College*, 371 Mass. at 138, 355 N.E.2d 309. If the plaintiff

is successful, unlawful discrimination is presumed, and the burden shifts at the second stage to the defendant employer "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected ... for a legitimate, nondiscriminatory reason." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *see also Wheelock*, 371 Mass. at 138, 355 N.E.2d 309 (citing *McDonnell Douglas* ).

At the next, or third, stage, federal and state courts appear to diverge somewhat, and a plaintiff's burden may differ depending on whether his claim arises under federal or Massachusetts law.

An ADEA plaintiff bears the ultimate " 'burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age.' " *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 332 (1st Cir.1997) (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991)). Therefore, to survive summary judgment, once the defendant-employer has rebutted the plaintiff-employee's *prima facie* case with a legitimate, nondiscriminatory reason for the discharge, a plaintiff still must prove under federal law that intentional discrimination motivated the defendant's action. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 843 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). As the Supreme Court noted in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993),[5] the inference of discrimination originally attributable to the plaintiff's *prima facie* facts evaporates when the defendant satisfies his second-stage burden of production. *Id.* at 510–11, 113 S.Ct. at 2748–49. Thereafter, "[d]irect or

---

**4.** It bears mentioning that in a case released since Magistrate Judge Neiman's Report and Recommendation in this case was issued, the First Circuit clarified that in *non*-reduction-in-force cases, an ADEA plaintiff must demonstrate: "(1) [he] was at least forty years of age, (2) [he] met the employer's legitimate job performance expectations, (3) [he] experienced adverse employment action, and (4) *[he] was replaced by a person with roughly equivalent job qualifications*." *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 332 (1st Cir.1997) (alterations in original) (emphasis supplied) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d

1113, 1117 (1st Cir.1993)). In reduction in force scenarios, the fourth element differs slightly, i.e., "the plaintiff may demonstrate either that 'the employer did not treat age neutrally or that younger persons were retained in the same position.' " *Id.* at 333 (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir.1993)). In any event, Miner has established a *prima facie* case for the "non-reduction-in-force" context.

**5.** Although *Hicks* involved a Title VII race discrimination claim, the First Circuit has found its analysis equally applicable to age discrimination

indirect evidence of discriminatory motive may do, but 'the evidence as a whole ... must be sufficient for a reasonable fact finder to infer that the employer's decision was motivated by age animus.'" *LeBlanc,* 6 F.3d at 843 (quoting *Goldman,* 985 F.2d. at 1117); *see also Hidalgo,* 120 F.3d at 335. Thus, "the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer." *Id.* This burden under the ADEA is sometimes colloquially called "pretext-plus."

By contrast, under Massachusetts state law, it would appear that a chapter 151B plaintiff need not demonstrate "pretext-plus" to survive summary judgment. As set forth by the SJC in *Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 646 N.E.2d 111 (1995), Massachusetts law allows a plaintiff to survive summary judgment *either* by showing discriminatory animus *or* by demonstrating that the defendant's proffered reason was pretext. Thus, under *Blare*'s "pretext-only" paradigm, "a plaintiff who has established a *prima facie* case and persuaded the trier of fact that the employer's articulated justification is not true but a pretext, is entitled to judgment." *Blare,* 419 Mass. at 443, 646 N.E.2d 111. While the differing burdens may bear less significance at trial, they may substantially affect outcomes in the summary judgment context. *See, e.g., Forsythe v. Microtouch Sys., Inc.,* 945 F.Supp. 350, 358–59 (D.Mass. 1996); *Terry v. Electronic Data Sys., Corp.,* 940 F.Supp. 378, 384–85 (D.Mass.1996).

The distinction recognized is *Blare* is subtle because, like the ADEA plaintiff, the chapter 151B plaintiff continues to bear the burden of persuasion on the ultimate issue of discrimination. *Blare,* 419 Mass. at 445, 646 N.E.2d 111. Under *Blare,* while "[t]he plaintiff need not conclusively exclude all other possible explanations for the decision and prove intent beyond a reasonable. doubt," *id.* at 446, 646 N.E.2d 111, the plaintiff still must "produce evidence sufficient to support a jury verdict that it was more likely than not that the articulated reason was *pretext for actual discrimination.*" *Id.* at 447, 646 N.E.2d 111 (emphasis supplied).

Thus, the concepts of pretext and discrimination are not wholly separate under the Commonwealth's standard, but rather, plaintiff must show at least some evidence linking the pretext to discrimination. The need to make this showing is apparent in the SJC's recent clarification of *Blare,* in which the court concluded that at the third stage of proof, "the burden returns to the plaintiff to persuade the court, by a fair preponderance of the evidence, that the defendant's proffered reason for its employment decision was not the real reason, but is a pretext for discrimination." *Matthews v. Ocean Spray Cranberries, Inc.,* 426 Mass. 122, 126, 686 N.E.2d 1303, 1308 (1997). In other words, "[i]f the defendant's reasons are not discriminatory, and if the plaintiff does not prove that they are pretexts, the plaintiff cannot prevail." *Id.*

### B. Plaintiff's Chapter 151B Claim

In endeavoring to preserve his state law discrimination claim, plaintiff appropriately emphasizes the diminished burden a plaintiff shoulders in a "pretext-only" jurisdiction such as Massachusetts. However, the evidence supporting Miner's claim of pretext is so slender that no reasonable jury could find in plaintiff's favor on this point even on the state law claim.

The somewhat lighter burden a plaintiff bears under Chapter 151B (in contrast to the ADEA) in producing evidence sufficient to avoid summary judgment on an employment discrimination claim, *see Forsythe v. Microtouch Sys., Inc.,* 945 F.Supp. 350, 359 (D.Mass.1996), does not signify that summary judgment is never appropriate in unlawful discrimination cases under chapter 151B. *Matthews v. Ocean Spray Cranberries, Inc.,* 426 Mass. 122, 126, 686 N.E.2d 1303, 1308 (1997); *Tardanico v. Aetna Life & Casualty Co.,* 41 Mass.App.Ct. 443, 448, 671 N.E.2d 510 (1996) (citing *Blare,* 419 Mass. at 440, 646 N.E.2d 111). Here, the record simply does not support plaintiff, even under a generous interpretation of the "pretext only" burden under chapter 151B.

The defendants maintain that Miner was discharged for poor performance. Viewing

claims brought under the ADEA. *LeBlanc,* 6 F.3d    at 843.

the evidence in the light most favorable to the plaintiff, Miner can assert only that he had performed satisfactorily for many years for Connleaf's predecessor, and that he was never told of his failings prior to his discharge.[6] Unfortunately, Miner's work for the prior owner of the tobacco farm is irrelevant to Connleaf's evaluation of his performance during the fourteen months he was employed by Connleaf, and the mere fact that Miner was not told of his failings prior to his discharge, without anything else, does not cast sufficient doubt on the veracity of defendants' proffered explanation.

 Moreover, plaintiff's evidence of pretext in no way suggests age-based discrimination. To demonstrate that he was fired because of his age, Miner points to a pair of vague statements by the defendants, one declaring that Miner did not "fit into [Connleaf's] plans," and the other expressing that Miner "was set in his ways." While a jury might reasonably find, rightly or wrongly, that such remarks denote a certain stubbornness or rigidity, it would require an excessive leap for a reasonable fact finder to conclude that they constituted evidence of age discrimination.

Having failed to present adequate evidence from which a jury reasonably could find that his performance, despite evidence of deficiencies, was not the true reason for his discharge, and that but for his age, more likely than not, he would not have been discharged, *see Fontaine v. Ebtec Corp.*, 415 Mass. 309, 316 n. 8, 613 N.E.2d 881 (1993), Miner's claim cannot survive the defendants' motion for summary judgment under state law.

## IV. CONCLUSION

Given the delicacy of the issue, and the absence of any objection to Magistrate Judge Neiman's recommendation on the ADEA claim, the court has considered remanding Miner's ch. 151B claim to state court. *See Wooster v. Abdow Corp.*, Civ. A. No. 94–

30060–MAP, 1996 WL 131143, at *6 (D.Mass. March 21, 1996); *Blick v. Pitney Bowes Management Servs., Inc.*, No. Civ. A. 93–11573 WF, 1995 WL 791945 (D.Mass. Dec.26, 1995).[7] However, in this case, the absence of evidence is so compelling that remand would be unfair to all the parties and unnecessarily burdensome to the state court. It is never pleasant to grant summary judgment and bar plaintiff from his day in court, but it would be false generosity to pretend that this case contains the facts necessary to support the plaintiff's state law cause of action. Accordingly, the court will adopt in its entirety Magistrate Judge Neiman's Report and Recommendation allowing defendants' Motion for Summary Judgment. The motion will be ALLOWED.

A separate order will issue.

---

**6.** Defendants' Exhibits A and G would appear to refute this claim by evidencing that Miner was counseled; however, these exhibits were properly excluded by Magistrate Judge Neiman and have not been considered here.

**7.** On remand, the state courts in these cases ultimately allowed the defendants' motions for summary judgment on the state law claims as well. *See Wooster v. Abdow Corp.*, No. 94–077 (Mass.Super.Ct. Jan. 8, 1997); *Blick v. Pitney Bowes Management Servs., Inc.*, No. Civ. A. 93–3618–C, 1996 WL 414029 (Mass.Super.Ct. July 23, 1996).