**Morris ALLDER, Plaintiff,**

v.

**DANIEL O'CONNELL'S SONS, Defendant.**

**No. CIV. A. 96–30250–MAP.**

United States District Court, D. Massachusetts.

Sept. 11, 1998.

Alan M. Katz, Katz, Sasson & Hoose, Springfield, MA, for Morris Allder, Plaintiff.

John D. O'Reilly, III, O'Reilly & Grosso, Southborough, MA, for Daniel O'Connell's Sons, Inc., Defendant.

PONSOR, District Judge.

There being no objection, this Report and Recommendation is hereby adopted, and defendant's motion for summary judgment is DENIED.

*REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 19)*

August 20, 1998

NEIMAN, United States Magistrate Judge.

Morris Allder ("Plaintiff") claims to have been subject to unlawful disparate treatment by his employer, Daniel O'Connell's Sons ("Defendant"). Specifically, Plaintiff alleges that Defendant subjected him to ongoing discrimination as evidenced, at least in part, by racial slurs and an alleged policy of not pro-

moting blacks to supervisory positions.[1] In particular, Plaintiff claims to have been denied promotion to a foreman's position, to have been laid off and not recalled, to have been denied quality overtime and to have been met with retaliation when he complained of this treatment.

After appropriately filing with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission, Plaintiff removed his complaint to this court. Defendant's motion for summary judgment has been referred to the court for a report and recommendation pursuant to Rule 3 of the Rules of the United States Magistrates of the United States District Court for the District of Massachusetts. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court recommends that the motion be denied.

### I. *SUMMARY JUDGMENT STANDARD*

In accord with Fed.R.Civ.P. 56(c), summary judgment will be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Magee v. United States,* 121 F.3d 1, 3 (1st Cir.1997). Once the moving party has demonstrated that no genuine issue of material fact exists, the burden is on the opposing party to contradict the demonstration by coming "forward with specific provable facts which establish that there is a triable issue." *Aponte Matos v. Toledo Davila,* 135 F.3d 182, 186 (1st Cir.1998).

 Not every genuine factual conflict, however, necessitates a trial. "Rather, to be considered material, a disputed fact must have the potential to 'affect the outcome of the suit under the governing law.'" *Hinchey v. NYNEX, Corp.,* 144 F.3d 134, 140 (1st Cir.1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Indeed, even in employment discrimination cases, where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate "[i]f the nonmoving party rests merely

upon conclusory allegations, improbable inferences and unsupported speculation." *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151 (1st Cir.1998).

### II. *DISCUSSION*

#### A.

Title VII of the Civil Rights Act of 1964 provides that it shall be an "unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's ... race...." 42 U.S.C. § 2000e–2(a)(1). The Massachusetts analog to the federal civil rights statutes, M.G.L. ch. 151B, also makes it unlawful for an employer to discriminate because of an employee's membership in a protected classification and, more specifically, because of his race. M.G.L. ch. 151B § 4.

Direct evidence of intentional discrimination is rarely found in today's sophisticated employment world. "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Plaintiff, however, claims that Defendant had an actual, albeit unwritten, policy of not promoting blacks to foreman positions, (see Gedeon Dep. at 135–39), thereby presenting, perhaps, a rare case of direct evidence. Plaintiff nonetheless suggests, without dispute by Defendant, that his claim of race discrimination should be tested against the burden shifting paradigm used to analyze claims under both the federal and state statutes when no direct evidence is at hand. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Wheelock College v. Mass. Comm'n Against Discrimination,* 371 Mass. 130, 355 N.E.2d 309, 312 (Mass.1976). *See also Dichner v. Liberty Travel,* 141 F.3d 24, 30 n. 5 (1st Cir.1998). *Compare Carey v. Mt. Desert Island Hosp.,* Nos. 97–1661, 97–1688, 1998 WL 472058, at *19 (1st Cir. August 18, 1998)

---

**1.** Plaintiff uses the term "black" to refer to his own membership in a protected classification. The court will likewise use that term.

(Stahl, J., dissenting). The court proceeds accordingly. The purpose of the burden shifting paradigm is "to sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256 n. 8, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Plaintiff is a union laborer who worked for Defendant on several different construction jobs during the 1980s and 1990s. Sometime during 1995, Defendant's project superintendent recommended that Plaintiff become a labor foreman on one such project repairing bridges on the Massachusetts Turnpike in Ludlow ("Ludlow Project"). (Allder Dep. (Docket No. 29) Exh. 1–1 at 99–100.) It was Defendant's general practice that project superintendents recommend individuals to become foremen to Defendant's Vice President, Stephen Maiorano. (Maiorano Dep. (Docket No. 29) Exh. 2 at 66–67.) The ultimate decision rested with Maiorano. (Id.)

According to Plaintiff, the project superintendent, as well as Defendant's personnel and project managers, told him that he would be made a foreman on the Ludlow Project. (Allder Dep. at 85, 99, 100, 104.) In fact, Plaintiff and another prospective foreman were sent to school to become certified as traffic safety supervisors. (Maiorano Dep. at 77–78, 80.) The record also suggests that, although not officially named a foreman, Plaintiff may have performed functions usually performed by one. For example, Plaintiff maintains that he was making personnel suggestions regarding the hiring and firing of employees and that those suggestions were followed by management. (Allder Dep. at 136.) In addition, Plaintiff was told by the project manager that he was, essentially, the foreman, although he was not paid as such. (Id. at 113, 115.) On several occasions Plaintiff complained to the project manager about Defendant's failure to promote him. (Id. at 107.)

Defendant also maintains that Plaintiff's layoff from the Ludlow Project in the winter of 1995 comports with its long-standing and admittedly discretionary policy. (Sullivan Aff. (Docket No. 19) ¶ 11.) Pursuant to that policy, Defendant kept certain key employees, including foremen, employed over the winter months to avoid losing them to other construction firms. Plaintiff was not such a key employee. Granted, as Defendant claims, non-minority individuals were laid off pursuant to its policy prior to and at the same time as Plaintiff. Nonetheless, Plaintiff contends that it was his understanding when hired that he would remain employed for the duration of the Ludlow Project. Instead, others with less seniority and familiarity with the project were retained.

Under the burden shifting analysis applicable to both the federal and state statutory regimes, Plaintiff must first establish a *prima facie* case of employment discrimination by demonstrating that (1) he is a protected class member, (2) he performed up to Defendant's legitimate job expectations, and (3) he suffered an adverse job action. *See Kale v. Combined Ins. Co. of Am.,* 861 F.2d 746, 760 (1st Cir.1988); *Wheelock College,* 355 N.E.2d at 312. The requirements of such a *prima facie* case are not onerous, *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, and Plaintiff easily satisfies his burden. In fact, in the court's view, Defendant practically concedes the point.

First, there is no dispute that Plaintiff's race places him in a protected class. Second, Defendant does not dispute that Plaintiff suffered various alleged adverse job actions. Third, Defendant does not claim, or at least did not initially claim, that the adverse job actions taken against Plaintiff were for performance related reasons.

■ Defendant now claims, however, that Plaintiff was unqualified for the foreman position, that he was not considered for promotion based on Maiorano's adverse experiences with him, and that Plaintiff was poorly regarded by his co-workers. (Maiorano Aff. (Docket No. 19) Exh. F(2) ¶ 2.) The *prima facie* evidence, however, suggests a contrary conclusion. *See Dichner,* 141 F.3d at 30 n. 6 ("The *prima facie* case necessarily is a flexible device, and its exact dimensions vary depending on the circumstances."). First, Plaintiff was being trained for increased responsibilities, from which it may reasonably be inferred that he was a valued worker. Second, together with another employee who subsequently became a foreman, Plaintiff

was being trained in the more skilled responsibility of traffic safety. Third, Plaintiff was given sizable overtime, a benefit which would not be made available to a marginal worker. Finally, Plaintiff was told by the project manager that he would in fact become a foreman on the Ludlow Project sometime after going to traffic safety school. Plaintiff has more than met his threshold burden.

■ At this point, the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for its adverse employment actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. *See also Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.,* 152 F.3d 17, 24 (1st Cir.1998). Under Title VII standards, a defendant faced with such a *prima facie* case must do little more than articulate a legitimate nondiscriminatory reason for the actions taken. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Under M.G.L. ch. 151B, on the other hand, the employer must produce at least some competent evidence in support of its articulated reason. *Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 646 N.E.2d 111, 115 (Mass.1995). Neither standard is particularly rigorous. In fact, even under the state standard, the burden of persuasion never shifts to the defendant. *Id.* at 116.

In the case at bar, Defendant rises to the task and offers a variety of legitimate nondiscriminatory reasons for Plaintiff's various claims of adverse employment action. First, Defendant presents sufficient evidence that other individuals were also laid off contemporaneously with and under similar conditions as Plaintiff, namely, the changing seasons and Defendant's fluctuating manpower needs. Defendant also proffers its policy of retaining only those workers it fears might be lost to other construction firms. Defendant claims that Plaintiff just did not fit the bill. In addition, Defendant claims that it never intended to promote Plaintiff, given Maiorano's evaluation of him, and, as a result, the decision not to promote him was nondiscriminatory. Finally, Defendant shows that Plaintiff was provided substantial overtime during his tenure, thereby countering Plaintiff's claim of discriminatory animus

toward him because of his race. Given these proffered reasons, the presumption of discrimination, at least under the federal regime, vanishes. *See Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995).

■ At this point in the inquiry, the analysis diverges depending upon whether the Plaintiff invokes the federal or state antidiscrimination statute. To defeat summary judgment against him with respect to his Title VII claim, Plaintiff must provide sufficient evidence that Defendant's proffered reason for its actions was not only a pretext for discrimination, but reflective of a discriminatory motive. *Hidalgo v. Overseas Condado Ins. Agencies, Inc.,* 120 F.3d 328, 335 (1st Cir.1997). This "pretext plus" requirement differs from the "pretext only" standard applicable to claims of discrimination under the Massachusetts statute. Under M.G.L. ch. 151B, a plaintiff need only produce evidence to support a determination that the defendant's articulated reason for an adverse employment action is pretextual. *Blare,* 646 N.E.2d at 116 ("Massachusetts is a pretext only jurisdiction."). A plaintiff need not demonstrate as well that the only possible reason for that action was discrimination. *Id.* ("A plaintiff who has established a *prima facie* case and persuaded the trier of fact that the employer's articulated justification is not true but a pretext is entitled to judgment.").

Although there is some question as to whether Massachusetts continues to be a "pretext-only" state as defined in *Blare, see Matthews v. Ocean Spray Cranberries, Inc.,* 426 Mass. 122, 686 N.E.2d 1303, 1309 (Mass. 1997); *McMillan v. Mass. Soc. for the Prevention of Cruelty to Animals,* 140 F.3d 288, 298 n. 4 (1st Cir.1998), *rehearing denied en banc,* 140 F.3d 312 (1st Cir.1998), that issue is of no moment in the case at bar. Plaintiff presents sufficient evidence to withstand summary judgment under the even more burdensome pretext-plus standard. *See also Miner v. Connleaf, Inc.,* 989 F.Supp. 49, 52–53 (D.Mass.1997); *Dichner,* 141 F.3d at 31 n. 7; *Laurin v. Providence Hosp.,* 150 F.3d 52,

58 (1st Cir.1998); *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 27 (1st Cir.1998).

 Viewing the facts in a light most favorable to Plaintiff, the court has little difficulty concluding that the record holds sufficient evidence that Defendant's proffered nondiscriminatory reasons for its various adverse employment actions may well be pretextual. First, Plaintiff offers substantial circumstantial evidence in support of his claim of pretext. Plaintiff was told that he was going to become a foreman on the Ludlow Project, he performed duties commensurate with those of a foreman in training, he was sent to traffic safety school, along with a nonminority individual who was later selected to become a foreman, as Plaintiff believed he was to be as well, and Defendant had no black managers or foremen. Although Defendant claims that it has had seven minority foremen over the last twenty-five years, (Sullivan Aff. ¶ 13), nowhere does it claim that any of those foremen were black.

Second, there is circumstantial evidence of a discriminatory atmosphere. Racial epithets were used by managers and co-workers toward Plaintiff, as well as other black employees, on a number of occasions. One manager broadcast over a loudspeaker a racial slur directed at Plaintiff. The evidence also suggests that racial slurs were made by other foremen. Plaintiff claims to have contemporaneously reported at least two of the incidents.

The court realizes that Defendant disputes that Plaintiff made anyone aware of these incidents or that it had any independent reason to know of the incidents until just prior to the filing of the instant litigation. (Sullivan Aff. ¶¶ 2–5.) In fact, Plaintiff never filed a grievance in accord with the collective bargaining agreement complaining of the racial epithets. (Id. ¶ 7.) Defendant maintains that Plaintiff was aware of the grievance procedure as he was a former union steward.

Nevertheless, the record suggests that at least some of the racial incidents were not adequately addressed by management. For example, the project manager who broadcast a racial slur was simply told by Maoirano, "You have to watch what you do. You have to handle yourself better than that." (Maoir-

ano Dep. at 121.) In the court's opinion, this is hardly a scathing reprimand.

 Of course, the uncontroverted use of racial slurs by Defendant's project manager does not create strict liability on Defendant's part. *See College–Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination*, 400 Mass. 156, 508 N.E.2d 587, 591 (Mass.1987). While there is support for such a broad cause of action under certain circumstances, the law is equally well settled, under both state and federal standards, that stray comments, particularly when they are ambiguous and uttered outside the decision-making process, are insufficient to support strict liability. Taken alone, such statements do not rise to the level of actual discrimination. *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 676 (1st Cir.1996); *Johansen v. NCR Comten, Inc.*, 30 Mass.App.Ct. 294, 568 N.E.2d 611, 615 (Mass.App.Ct. 1991). *See Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 541 (8th Cir.1991) (statements by various employees could not support an inference of discrimination because those employees "did not take part in the decision to discharge").

 On the other hand, "[r]acially derogatory language in the workplace can be evidence of a discriminatory atmosphere." *Powell v. Missouri State Highway and Transp. Dep't*, 822 F.2d 798, 801 (8th Cir. 1987); *Johansen*, 568 N.E.2d at 615. That appears to be the case here. Plaintiff has cited several racial remarks made by superiors and peers, as well as management's inadequate response. Taking these facts as true for purposes here, it can reasonably be inferred that Plaintiff suffered a discriminatory animus towards him based on his membership in a protected class. At a minimum, Plaintiff raises a genuine issue of material fact as to whether the atmosphere was infused with discriminatory animus.

 Other evidence also supports the inference that the reasons provided by Defendant for its adverse job actions against Plaintiff are pretextual. Again, standing alone, the fact that Defendant had a discretionary layoff policy does not give rise to an

inference of discrimination. *Doan v. Seagate Technology, Inc.*, 82 F.3d 974, 978 (10th Cir. 1996). The use of subjective or discretionary criteria to determine layoffs "is itself not a grounds for challenging those evaluations as discriminatory." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 780 (8th Cir. 1995). *See Konowitz v. Schnadig Corp.*, 965 F.2d 230, 234 (7th Cir.1992). Yes, taken together with other factors, such a policy may be circumstantial evidence of discrimination.

It is admitted that Plaintiff was not recalled to the Ludlow Project. Defendant maintains, however, that the Union was responsible for referring qualified applicants to its jobs and that Plaintiff never requested the Union to place him on Defendant's recall list. (Sullivan Aff. ¶ 13.) The only other way an individual would be recalled is if a project superintendent of a particular job specifically asked for a particular individual. (Id.) This would require that other project superintendents be familiar with an individual and his work. Other than Plaintiff's own project superintendent, however, other project superintendents had no occasion to know him or his work. It therefore stands to reason, Defendant maintains, that no other superintendent would recall him through this method.

It can be reasonably concluded for purposes of the present motion that Defendant hired Plaintiff with the intention of his remaining employed for the duration of the Ludlow Project. Nonetheless, Plaintiff was laid off from the project. It also appears that, after Plaintiff's layoff, individuals who were not black and were working on other jobs were retained by Defendant and transferred to the Ludlow Project in Plaintiff's stead. (See Docket Nos. 38 and 39.) *Cf. Brennan*, 150 F.3d at 29–30 (evidence of subsequent hires may undercut an employer's proffered reason for reducing a workforce and be probative of pretext).

In response, Defendant claims that, aside from one minority laborer hired pursuant to an affirmative action policy, the retained employees were all either foremen or critical employees transferred to the project in order to retain them in the construction off-season. (See Docket No. 39.) Nonetheless, there is enough evidence that Plaintiff may have been unable to avert his layoff due to his race. As described, there is sufficient evidence to suggest that Plaintiff's attempts to become a foreman were thwarted. Had he been given a meaningful opportunity to become a foreman, Plaintiff would likely not have been laid off and would have been among those employees retained in the construction off-season.

Finally, Plaintiff claims that Defendant, through William Sullivan, its personnel manager and equal employment officer, admitted that Defendant had a policy against promoting blacks. That "admission" came in the form of deposition testimony of a co-worker, Mike Gedeon. According to Gedeon, Sullivan made him aware that Defendant had a policy of not promoting blacks. Sullivan told him that "the company's policy was to keep it white." (Gedeon Dep. at 135–39.) Granted, under questioning, Gedeon was less clear that Sullivan actually said to him that it was a "policy." However, he was clear, even when pressed, that, "[t]hey keep it known no minority supervision position, and talking to him that's what I gather . . ." (Id.)

Evidence that such a policy may have existed, regardless of whether that policy was alleged to be of a spoken or unspoken nature, constitutes evidence of racial animus and discriminatory motive sufficient to enable Plaintiff to survive Defendant's motion for summary judgment on both his federal and state claims. For that reason and the others articulated above, Defendant's motion for summary judgment on Plaintiff's discrimination claims should be denied.

### B.

 Plaintiff also claims, pursuant to both Title VII and M.G.L. ch. 151B, that he was retaliated against when he attempted to assert his rights under those acts. The elements of a retaliation claim are essentially the same under both Title VII and M.G.L. ch. 151B. *See Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996); *Lewis v. Gillette Co.*, 22 F.3d 22, 24–25 (1st Cir. 1994); *MacCormack v. Boston Edison Co.*,

423 Mass. 652, 672 N.E.2d 1, 7 (Mass.1996). To establish a *prima facie* case of retaliation, a plaintiff must first demonstrate that he engaged in an activity protected by Title VII or M.G.L. ch. 151B, or that he complained to his employer of a violation of those statutes. *Lewis,* 22 F.3d at 24–25. The success of his claim requires only that he reasonably believed the conduct he protested violated those statutes. *Rodriguez–Hernandez v. Miranda–Velez,* 132 F.3d 848, 855 (1st Cir. 1998). Next, a plaintiff must show that "he suffered an adverse employment action ... and [that] a causal connection existed between the protected conduct and the adverse action." *Fennell,* 83 F.3d at 535. *See also Lewis,* 22 F.3d at 24–25; *Costello v. Massachusetts Rehab. Comm'n,* 982 F.Supp. 61, 66 (D.Mass.1997).

 Plaintiff quite handily meets his *prima facie* burden. The record is replete with evidence showing that Plaintiff complained both about violations of his civil rights and racially motivated incidents. According to Plaintiff, he complained to Defendant about racial slurs each time he experienced them, in 1992, 1994 and the summer of 1995, although Defendant disputes this assertion. There is no dispute, however, that, through counsel, Plaintiff complained of the pattern of racial slurs in a letter dated September, 1995. Later that year, Plaintiff also expressed discontent to Defendant about the failure to promote him to a foreman position. At the same time, Plaintiff lamented Defendant's failure to pay him a foreman's rate despite his foreman-type responsibilities.

 Plaintiff also sufficiently demonstrates that he suffered a number of adverse employment actions that could be causally connected to his complaints of discrimination. For one, Plaintiff claims that he was not assigned quality overtime, that is, the kind which is assigned with advance notice, after complaining to Defendant of the alleged racial epithets used against him. It is undisputed that, while Plaintiff was a union steward, he worked more overtime than other employees. In fact, even after he was no longer steward in 1995, he continued to work more overtime than any other employee. (Sullivan Aff. ¶ 9.) Plaintiff claims, however,

that this allocation of overtime was made only in emergency situations, including nights and weekends, and that he was denied an opportunity to choose his overtime shifts.

Plaintiff also claims that he was laid off in December of 1995 in retaliation for his complaints about various racially discriminatory practices. As described above, this layoff occurred despite the representation that he would work on the Ludlow Project through its completion. Plaintiff also contends, as described, that he was not recalled or rehired in retaliation for his complaints of racial discrimination. In the past, Plaintiff avers, he was recalled by Defendant each time there was a job for which he was qualified. After Plaintiff's complaints of discrimination in September of 1996, he claims, Defendant changed its policy of recall relative to him. As a result, Defendant failed to recall him, despite having numerous construction jobs for which he was qualified.

 Following the burden shifting paradigm in discrimination cases, once a plaintiff makes a *prima facie* showing of retaliation, the defendant must proffer a legitimate nondiscriminatory reason for the allegedly retaliatory adverse employment action. *Fennell,* 83 F.3d at 535. Once proffered, the burden shifts back to the plaintiff to offer sufficient evidence that the proffered reason is pretextual. *DeNovellis v. Shalala,* 135 F.3d 58, 65 (1st Cir.1998); *Miner,* 989 F.Supp. at 53; *Blare,* 646 N.E.2d at 117. More specifically, "[i]n a retaliation case, the plaintiff must prove by a preponderance of the evidence that the articulated reason, in significant measure, was a pretext for retaliation." *Ruffino v. State Street Bank and Trust Co.,* 908 F.Supp. 1019, 1045 (D.Mass.1995).

Here, as with Plaintiff's discrimination claim, Defendant proffers a number of legitimate nondiscriminatory reasons in support of its actions. Plaintiff's layoff, according to Defendant, was not in retaliation for his complaints of racial discrimination. The decision to lay him off was essentially *pro forma* and made pursuant to a policy in effect for over thirty years. The failure to recall Plaintiff, Defendant asserts, resulted from his failure

to request further work. In addition, none of the project superintendents for the other projects had experience with Plaintiff that would lead them to hire him directly.

■■■ As in cases of alleged disparate treatment, if a claim is brought pursuant to Title VII, as opposed to M.G.L. ch. 151B, the plaintiff must also demonstrate evidence that discriminatory animus motivated the decision to retaliate. *Miner*, 989 F.Supp. at 52–53. Such retaliation may be shown by presenting sufficient evidence of a temporal connection, that is, that the adverse employment action occurred shortly after the protected activity. *Costello*, 982 F.Supp. at 66. In the alternative, a plaintiff may show retaliation through evidence that otherwise similarly situated individuals did not suffer the same adverse employment consequences. *Id.*

■ The court finds Plaintiff's evidence sufficient to support a reasonable inference that Defendant's proffered reasons are pretextual and, conversely, that the real reasons for Defendant's various actions was discrimination. Viewing the record most favorably to Plaintiff, the court can readily infer that it was Defendant's original intention that Plaintiff be employed for the duration of the Ludlow Project. In addition, Plaintiff has proffered statistics which demonstrate that other similarly situated workers were recalled or hired during the same time period that Defendant claims to have pared down its work crew. The record also suggests that a different method of recall may have been used than was used in the past. These factual assertions give rise to at least a fair inference of discrimination.

There is also no dispute that Plaintiff's layoff and Defendant's failure to recall him occurred after Plaintiff complained several times, including once in 1995 through counsel, about racial slurs being directed toward him by his co-workers. A reasonable jury could conclude that Plaintiff was repeatedly rehired or recalled by Defendant until he complained about the racially discriminatory atmosphere. It appears to the court that this alone provides enough evidence of poten-

tially retaliatory actions for Plaintiff to meet his initial burden in his claim of retaliation. Stated another way, Plaintiff has met his *prima facie* case, at least with regard to his M.G.L. ch. 151B claim, by demonstrating evidence that the Defendant's proffered reasons for its actions are pretextual. As previously noted, the court believes that there is at least enough disputed evidence on each of his claims, intertwined as they are, to survive Defendant's motion at the instant juncture.

■ While the evidence is sufficient for Plaintiff's retaliation claim to survive under the state standard, the more rigorous federal standard also requires that a plaintiff present evidence that the defendant's actual reason for its actions was discrimination. As with his underlying claim of race discrimination under Title VII, Plaintiff offers evidence that Defendant's actions, specifically the decision not to promote him to a foreman position, were motivated by a discriminatory animus. Given that Gedeon was told by Defendant's personnel manager that management wanted to keep the supervisory staff white, any evidence of actions taken by Defendant as a result of Plaintiff's contravention of that policy supports not only an inference that Defendant's proffered reason was pretextual but that the real reason for Defendant's retaliatory actions was discriminatory. At a minimum, the material facts in the instant matter are enough in dispute for Plaintiff to withstand Defendant's motion even under the more stringent federal pretext-plus standard as to his claim of retaliation.

### III. *CONCLUSION*

For the foregoing reasons, the court recommends that Defendant's motion for summary judgment be DENIED.[2]

---

2. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court

for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of

this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.