Johnny LEWIS, Plaintiff, Appellant,

v.

GILLETTE, CO., Defendant, Appellee.

No. 93–1934.

United States Court of Appeals,
First Circuit.

Submitted Dec. 29, 1993.

Decided April 26, 1994.

Johnny Lewis on brief pro se.

Richard P. Ward, Robert B. Gordon and Ropes & Gray, Boston, MA, on brief for appellee.

Before TORRUELLA, BOUDIN and STAHL, Circuit Judges.

PER CURIAM.

Plaintiff Johnny Lewis appeals, pro se, from a summary judgment dismissing his employment discrimination action. Lewis alleges that defendant Gillette, Co., unlawfully harassed him over a several year period, and ultimately discharged him from employment, because he testified against the company at a race discrimination arbitration hearing. His complaint also asserts race discrimination and breach of contract claims under Massachusetts and federal law. Lewis abandoned the race discrimination claim below. On appeal he challenges only the dismissal of his two retaliation claims under Mass.Gen.L. ch. 151B, § 4.

The record shows that Lewis, who is black, worked at Gillette in various line jobs from 1972 to 1987. Sometime in 1984 or 1985, he testified on behalf of a co-worker at an arbitration hearing held pursuant to a ·class action settlement of race discrimination claims by black employees against Gillette. He claims that thereafter a group campaign of retaliatory harassment was launched against him by white employees at the plant. Those involved allegedly included his immediate supervisor, Steve Cannon, the division manager, George Carney, and Carney's secretary, Rita McAvoy.

Lewis stated in his deposition below that the primary form of harassment was constant daily "watching," "staring," or "gawking" at him while he went about his work. The named employees and others allegedly would stand as a group, or individually, and stare at him while he performed his tasks. This "watching," Lewis claimed, occurred almost daily, most frequently from 9:00 A.M. to 11:00 A.M., and while he punched in and punched out for the day. Lewis acknowledged, however, that his work station during most of this period was on the same floor as the others' offices, and in a direct line of vision through their office windows, or glass partitions.

In June, 1985, Lewis complained about the "gawking" to one of the attorneys in the class action case, Amos Hugh Scott. Scott, in turn reported the complaint to Gillette's in-house counsel, George Walker. According to Lewis, the only response to the complaint came from Cannon, who warned Lewis "whatever happens in Gillette you leave it there." Lewis also complained directly to Walker, and to two Gillette personnel managers in 1986 and 1987. An internal company report, written by Carney in May, 1987 shows that Carney warned Lewis that his persistence in these "unfounded allegations" constituted "a continued display of an attitude against the best interests of the company, and failure to cooperate with management" which could lead to a "final" warning.

In support of its motion for summary judgment on the harassment claim, Gillette produced affidavits from Carney, Cannon and McAvoy. Cannon denied knowing that Lewis had testified at an arbitration hearing until after Lewis was fired. McAvoy and Carney knew that Lewis had testified at a hearing, but averred that they did not know the subject of Lewis' testimony.

The evidence relating to Lewis's employment discharge focused on events that occurred on November 3, 1987, when Lewis reported to work late. The parties agreed that unbeknownst to Lewis, another worker had mistakenly punched Lewis's time card. Cannon, noticing that Lewis was not at his

work station, placed Lewis's punched time card on Carney's desk. When Lewis arrived, he retrieved the card and punched in. Cannon then confronted Lewis with the mispunched card.

The parties dispute what happened next. As the details are not necessary to our decision, we note only that Lewis's claim is that he was led to believe that his employment was terminated on the spot, and after a few preliminaries he left the building as instructed. Gillette's version, based on Carney's report, is that Lewis responded to Cannon in a belligerent and threatening manner, and made a personal telephone call despite an order and company policy to the contrary. Gillette alleges that Lewis' employment was terminated for insubordination displayed during this confrontation.

■ On review of a grant of summary judgment we approach the record de novo drawing all reasonable inferences in favor of the non-moving party. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 840 (1st Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 820 (1st Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Summary judgment is appropriate only when the moving party shows there is "no genuine issue as to any material fact and [he] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ When the non-moving party bears the burden of persuasion at trial, however, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party "may not rest upon mere allegation or denials of his pleading." *LeBlanc,* 6 F.3d at 841 (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." *LeBlanc,* 6 F.3d at 841 (citations omitted).

The district court granted summary judgment to Gillette on the retaliatory discharge claim because it found that Lewis's proof on the elements of causation and pretext were insufficient to make out a claim for the jury. As to the harassment claim, the court concluded that the "gawking" of which Lewis complained was not sufficiently "severe" conduct to constitute actionable harassment within the meaning of *Meritor Savs. Bank v. Vinson FSB,* 477 U.S. 57, 64–67, 106 S.Ct. 2399, 2404–06, 91 L.Ed.2d 49 (1986).

While this case was pending on appeal, the Supreme Court decided *Harris v. Forklift Sys., Inc.,* — U.S. —, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). There the Court explained that *Meritor* "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris,* — U.S. at —, 114 S.Ct. at 370. We need not assess the impact of this reformulated *Meritor* standard, however, because we conclude that plaintiff's evidence was otherwise insufficient to make out the elements of a prima facie case of retaliation. *See Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48–49 (1st Cir.1990) (in appraising summary judgments, a court of appeals is not wedded to the district court's reasoning, but may affirm on any independently sufficient ground).

■ To succeed on claims of retaliatory discharge and retaliatory harassment, a plaintiff must establish the basic fact that he was subjected to an adverse employment action *because* of his protected activity. Mass. Gen.L. ch. 151B, § 4(4) (making it unlawful for an employer to discriminate because the employee opposed practices forbidden by the law); *College–Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination,* 400 Mass. 156, 167, 508 N.E.2d 587, 594 (1987). At a minimum, there must be competent evidence that the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged. *Hazel v. U.S. Postmaster Gen.,* 7 F.3d 1, 3 (1st Cir.1993) (stating elements under federal discrimination laws); *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 33 (1st Cir.1990)

(same); *Morgan v. Massachusetts Gen. Hosp.*, 901 F.2d 186, 194 (1st Cir.1990) (same); *see also College–Town*, 508 N.E.2d at 591, 594 (though not bound by federal law, Massachusetts courts usually look to interpretations of the analogous federal statute).

The only evidence Lewis produced below which might be characterized as probative of a causal connection between his protected activity and the alleged group harassment was one of his own several inconsistent deposition statements about the temporal sequence of the events.[1] Although Lewis repeatedly expressed his personal belief that the "gawking" was motivated by a retaliatory animus, he produced no evidence to support his surmise.[2] At his deposition he candidly admitted that he knew of no facts which showed that the alleged harassers even knew the subject of his arbitration hearing testimony, nor that they had any reason to be concerned about it.[3] That Lewis' complaints about the gawking were conveyed to Cannon and Carney may support an inference that they thereby learned of Lewis's earlier protected activity, but that inference does not logically extend backwards to prove that the antecedent gawking was undertaken for a retaliatory purpose.

For the same reason, we affirm the dismissal of the retaliatory discharge claim. Lewis offered no additional facts to show a causal link between his protected testimony and his discharge from employment, more than two years later. His claim to a connection was based solely on the alleged campaign of gawking and Cannon's response to his first complaint about it.[4] As we have said, however, there was insufficient evidence to connect the gawking itself to Lewis's protected testimony, so it does not provide the needed bridge for the retaliatory discharge claim. Cannon's ambiguous response to Lewis' 1985 complaint, "whatever happens in Gillette you leave it there," does not alone provide a sufficiently strong inference of a retaliatory mindset to make out a claim of wrongful discharge more than a year later. Even adding whatever favorable inferences may be gleaned from Carney's later warning about "persistence in unfounded allegations," the sum of these two ambiguities does not provide sufficient evidence to establish the requisite causal connection. While circumstantial evidence sometimes may be "sufficient to leap the summary judgment ... hurdle," there must be something more than a few weak inferences to create reasonable proof of a link between events so widely separated in time. *Mesnick*, 950 F.2d at 828; *see also Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110–11 (1st Cir.1988) (while a showing of employment discharge "soon after" protected activity may be strongly suggestive of a causal connection, a longer period of time does not lend itself to such an inference). Since we find that Lewis failed to establish a prima facie case of retaliatory discharge, we need not consider the additional ground, insufficient evidence of pretext, relied upon below.

Accordingly, the judgment below is *affirmed.*

---

1. Lewis testified to various and widely divergent estimates of the date when the alleged harassment began. While he said at one point, "it started the day before I left ... to go to the arbitration hearing," Lewis Dep. at 114, ll. 18–25, he also stated at another point that he gave his arbitration testimony in June, 1984, but the alleged gawking began in June, 1985. Lewis Dep. at 83–25 to 84–1; 88, ll. 1–7. *See also* Lewis Dep. at 88–14 ("it was the month after I come back"); Lewis Dep. at 88, ll. 16–19 ("I can't remember [when it started]"); Lewis Dep. at 114, ll. 9–13 (it started "sometime after" the testimony); Lewis Dep. Exh. 3, (sworn charge ¶ 2, dating testimony to 1985 and gawking "since then"); Lewis Dep. at 311–7 (dating gawking from "shortly before" June, 1985).

2. Lewis apparently expressed his personal belief frequently, in the complaints he made to the class action attorney and others, as well as at his deposition. Lewis Dep. at 100–114, 223–40, 287–91. When pressed for the basis of his belief, however, he could only explain, "it's the only reason I could come up with I guess ... because I didn't have these problems until I come back [from the arbitration hearing]". Lewis Dep. at 249, ll. 3–4, 7–8.

3. Lewis Dep. at 260–62; 306, ll. 5–13.

4. Lewis Dep. at 250–55.