**Edna Loide TAVARES DE
ALMEIDA, Plaintiff,**

v.

**The CHILDREN'S MUSEUM, Defendant.**

**No. Civ.A. 97–10512–REK.**

United States District Court,
D. Massachusetts.

Nov. 30, 1998.

Edna Loide Tavares De Almeida, Fall River, MA, pro se.

Daniel J. Driscoll, Boston, MA, for plaintiff.

Sara Goldsmith Schwartz, Schwartz & Brennan, Andover, MA, for the Children's Museum, defendant.

KEETON, District Judge.

### I.

Pending before the court for decision are the following motions:

(1) Defendant's Motion for Judgment on the Pleadings (Docket No. 33, filed July 28, 1998), with Memorandum in Support (Docket No. 34). Plaintiff has filed opposition (Docket No. 39, filed September 9, 1998).

(2) Defendant's Motion to Stay Discovery Pending Decision on its Motion for Judgment on the Pleadings (Docket No. 35, filed July 28, 1998), with notice of plaintiff's assent (Docket No. 36).

(3) Plaintiff's Assented-to Motion to Enlarge Time [to August 24, 1998] to Oppose Motion for Judgment on the Pleadings (Docket No. 37, filed August 11, 1998).

The parties have also submitted additional filings in relation to defendant's Motion for Judgment on the Pleadings. These filings (Docket Nos. 40–43 and 45) introduce factual proffers, by affidavits and factual contentions alleged without supporting evidence, that the court will appropriately consider only if treating the motion for judgment on the pleadings as a motion for summary judgment.

### II. Procedural Background

Plaintiff brought this action against defendant, her former employer, alleging that a male supervisor sexually harassed her while she was in the scope of employment, that her supervisors passed over her for a promotion because she would not consent to sexual conduct, that her supervisors subjected her to differential treatment on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and Mass. Gen.L. Ch. 151B, and that her supervisors constructively discharged her in early 1995.

Plaintiff filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD") within three weeks of the alleged constructive discharge that occurred in January 1995, and within two months of the last allegedly discriminatory act (other than constructive discharge) that occurred on December 10, 1994.

The defendant has filed a Motion for Judgment on the Pleadings, asserting that plaintiff's complaints are time-barred because she did not comply with the administrative filing

requirements of Title VII and M.G.L. ch. 151B. Because plaintiff failed to file a timely administrative complaint with the EEOC or MCAD, defendant argues, the court should dismiss this civil action. Defendant also disputes plaintiff's use of the "continuing violation" doctrine that, plaintiff asserts, allows her to bring otherwise-barred claims against the defendant.

The defendant contends that the incident that occurred on December 10, 1994 did not constitute actionable sexual harassment and that, for this reason, plaintiff has not alleged any acts of sexual harassment occurring within the limitation period.

Defendant also makes two analytically separable contentions regarding plaintiff's state-law claims; one contention is that they are time-barred; the other, that this court should decline to take jurisdiction to adjudicate whether they are time-barred and, if not, what the outcome on the merits of the state-law claims should be.

### III. Factual Background

Plaintiff was employed by the Children's Museum of Boston as a temporary Visitors Services Supervisor ("VSS") during the summer of 1992. While in this position, plaintiff was supervised by Clarence Cummins ("Cummins"). In October, 1992 plaintiff became a part-time Overnight Staffperson at the Museum.

Plaintiff alleges in her complaint, and defendant denies, that as soon as she was hired as a VSS in July 1992, Cummins began subjecting her to "constant demands for dates and requests for sexual favors." *See* Complaint, Docket No. 2, filed January 17, 1997. Plaintiff also alleges that Cummins became "extremely interested in whether Plaintiff had a boyfriend and on two occasions asked Plaintiff if she could have his children." *Id.* Plaintiff alleges that Cummins continued his behavior even though she repeatedly rejected his advances. In her complaint, plaintiff contends that Cummins eyed her body up and down and attempted to hug and kiss her on the cheek after seeing her kiss several close friends on the cheek in greeting.

Plaintiff asserts that Cummins promised her that she would become a full-time VSS in the fall of 1992. Defendant denies this assertion. In November 1992, plaintiff asked Cummins about the position and he responded that he had given it to someone else. One month later, in December 1992, plaintiff contends that Cummins' supervisor, Dolores Calaf ("Calaf"), asked her why she was not a VSS. Plaintiff responded that she did not obtain the position because she was not willing to "go out with Mr. Cummins." Plaintiff recounted Cummins' behavior, and Calaf told plaintiff that she would speak with Cummins. Later, Calaf told the plaintiff that Cummins had denied the allegations, and plaintiff responded that she wanted to commence an internal investigation of her sexual harassment claims.

According to plaintiff's complaint, the Museum found that Cummins had sexually harassed her but did not discipline him. Defendant denies this assertion, but admits that Museum officials told plaintiff that "they were going to watch him." *See* Complaint, Docket No. 2, at paragraph 11. Plaintiff maintains that she began avoiding Cummins because the Museum would not discipline him. She alleges in her complaint that "her activities ... became restricted because she was so afraid of what he might do to her if they met." Plaintiff contends that Cummins' behavior created a hostile environment at the Museum.

On December 10, 1994, according to plaintiff's complaint, Cummins gave her

"such a leering look filled with hatred and hostility that she became extremely fearful of what he might do to her. She began to shake with fear and very upset, and feeling extremely nauseous, she ran to the bathroom."

Defendant denies this allegation as well as plaintiff's allegation that two similar encounters had occurred during the same year.

Plaintiff told her overnight staff supervisor, Sylvia Sawin ("Sawin"), about the December 10th encounter, and Sawin spoke with the Museum's Human Resources Department about the situation.

On January 13, 1995, Sawin called plaintiff to let her know that

the Museum did not want to get into the issue once again based on the December 10, 1994 incident. [T]here was nothing they could do about it.

Plaintiff alleges that after this conversation on January 13, 1995, she decided to leave her position at the Museum because the atmosphere created by Cummins' behavior was, in her mind, so hostile that she felt she had "no alternative." Plaintiff contends that she was constructively discharged by the Museum on the basis of sexual harassment. Defendant denies this contention and asserts instead that plaintiff "voluntarily resigned from her employment." Finally, plaintiff maintains that defendant condoned Cummins' behavior by refusing to take action on her complaint.

## IV. Applicable Legal Tests

### A. Introduction

Before I proceed to the merits of the motion, I note that, in her filings, plaintiff has indicated that the court may treat the defendant's Motion for Judgment on the Pleadings as a motion for summary judgment under Fed.R.Civ.P. 12(c). Although it is within the authority of a district court to convert a motion for judgment on the pleadings into a motion for summary judgment, my practice is not to do so ordinarily, and especially not without forewarning to the parties. I do not treat a Rule 12(c) motion for judgment on the pleadings as one for summary judgment and grant it without first notifying the parties that I intend to do so and allowing further responses.

### B. The Legal Test for Judgment on the Pleadings

■ A party may move for judgment on the pleadings "[after the pleadings are closed but within such time as not to delay the trial]." See Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is "a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings ..." Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:* Civil 2d § 1367. A trial court must accept all of the facts presented by the non-movant as true and the inferences to be drawn therefrom must be viewed in the light most favorable to the non-movant. *See Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988). A defendant's motion for judgment on the pleadings may not be granted by a court "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957)).

■ These guiding precedents, however, are subject to a clarification declared in *Judge v. City of Lowell,* 160 F.3d 67, 72–73 (1st Cir.1998).

Notwithstanding *Conley,* this circuit and others have held that in civil rights cases such as the present, a bare conclusory allegation of the critical element of illegal intent, including of an intent to discriminate, is insufficient. We have required the plaintiff "to allege particulars sufficient to sanction a factfinder in drawing a reasonable inference of intentional disparate treatment based on race." *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989). Put another way, the element of illegal motive must be pleaded by alleging specific non-conclusory facts from which such a motive may reasonably be inferred, not merely by generalized asseveration alone. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990) (requiring that alleged facts in complaint "specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful").

The above-mentioned cases in this circuit predate the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), as well as the Court's very recent decision in *Crawford–El v. Britton,* —— U.S. ——, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). As the district court relied upon the earlier First Circuit caselaw in determining that the Third Amended Complaint was legally inadequate, we must decide whether the requirement stated in

those cases survives *Leatherman* and *Crawford–El.* Based particularly on the Court's dicta in *Crawford–El, infra,* we believe that it does, at least in a case like the present alleging a constitutional violation calling for proof of an illegal motive. We also believe, contrary to Judge's contentions, that the district court did not err in its manner of applying our precedents to the Third Amended Complaint.

160 F.3d 67, 72(footnote 3 omitted).

Footnote 3 in *Judge v. City of Lowell* was as follows:

We have indicated that requiring the pleading of such facts serves at least three useful purposes. First, it gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. Second, we have recognized that "rising litigation costs (and the associated impact of an improper threat of litigation) speak for requiring some specificity before permitting a claimant 'to drag a defendant past the pleading threshold.'" *Boston & Maine Corp. v. Hampton,* 987 F.2d 855, 865 (1st Cir.), *reh'g denied,* 7 F.3d 281 (1993) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). Third, we have noted that the "burgenoning caseload crisis in the district courts weighs in favor of earlier disposition of baseless claims." *Boston & Maine Corp.,* 987 F.2d at 865.

*Id.,* footnote 3.

## V. Counts I & II: Title VII, Sexual Harassment and Retaliation

### A. Introduction

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer

... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1) (1998).

Under 42 U.S.C. § 2000e–5, an individual alleging an unlawful employment practice must file a charge with the EEOC within 180 days after the alleged discriminatory incident occurred. If the individual first files a claim with the appropriate State agency, then the charge must be filed with the EEOC within 300 days after the alleged discriminatory incident occurred. *See* 42 U.S.C. § 2000e–5 (1998).

In the instant case, plaintiff filed a complaint with MCAD and EEOC on February 3, 1995. Plaintiff alleges that she was constructively discharged on January 13, 1995 and that her complaint was "unquestionably timely" filed. Plaintiff further contends that she is entitled, for the purpose of determining damages, to use of the continuing violation doctrine that would allow her to bring otherwise time-barred claims.

### 1. The Constructive Discharge Claim

Plaintiff's claim of constructive discharge is based on her allegations of sexual harassment. A determination of a claim of constructive discharge in the context of this case is a kind of claim commonly referred to as presenting to the court a mixed issue of fact and law. It also involves a question to which an evaluative response is expected. That is, something more is involved beyond just a determination of "historical" or "basic" facts and a determination of applicable legal tests. Someone (jury or judge) must make an evaluative determination in applying the applicable legal tests to this factual context.

 A constructive discharge occurs when "working conditions are so intolerable that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." *Vega v. Kodak Caribbean Ltd.,* 3 F.3d 476, 480 (1st Cir. 1993). This is an evaluative determination made by applying an objective standard, not a state-of-mind standard. *See Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986) (citing *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985), cert. denied, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1989)). Under this objective standard, an employee "is protected from a calculated effort to pressure him [or her] into resignation through the imposition of unreasonably harsh conditions, in excess of those

faced by his [or her] coworkers." *Id.* An employee "is not, however, guaranteed a working environment free from stress." *Id.* A determination of constructive discharge, therefore, ordinarily requires an evaluation of working conditions as a whole, and their effect on the hypothetical reasonable person, and this evaluative determination must be supported by findings of historical fact as to particular acts, words spoken, or other circumstances.

In her complaint, plaintiff points to alleged conduct of Cummins that is disputed by defendant. Plaintiff alleges that, on December 10, 1994, Cummins looked at her "in a predatory, leering and hateful manner." This alleged conduct is relevant to determinations regarding plaintiff's working conditions. Furthermore, plaintiff alleges, and defendant denies, that conduct alleged to be similar to the December 10, 1994 incident occurred also at two other points during the same year. Plaintiff asserts that a witness, named "Teddy," viewed these additional incidents. The complaint, however, does not specify when these additional incidents occurred or give other, more specific, details regarding them. Although plaintiff disputes defendant's contention that no contact between Cummins and plaintiff occurred for 19 months, plaintiff does not identify, for the court, the instances of contact.

■ Under the constructive discharge standard stated above, and under the pleadings requirements as explained in *Judge v. City of Lowell, supra*, plaintiff must identify a factual premise, supportable by evidence, that would also support an evaluative determination that a reasonable person in plaintiff's position felt that she had no choice but to resign. I conclude, as a matter of law, that plaintiff has failed to meet her burden of pleading not conclusions but a basis in alleged historical facts that, if supported by admissible evidence that could be credited by a finder of fact would support the contention that defendant constructively discharged plaintiff.

Plaintiff's effort to invoke, in opposition to the pending dispositive motion, the subjective effect that Cummins' conduct had on her is not supported by precedent. The decisive effect is the effect that the conduct would have on a hypothetical reasonable person. In the circumstances of this case, playing up the drama of plaintiff's reactions to Cummins' conduct does not serve the need for admissible evidence that would support an evaluative determination that defendant constructively discharged plaintiff.

**2. The Continuing Violation Claim**

■ Plaintiff further asserts that her complaint was timely filed because defendant committed a "continuing violation." Plaintiff also asserts that the continuing violation was "serial." A serial violation "is composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII." *DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir.1997) (quoting *Jensen v. Frank*, 912 F.2d at 522 (1st Cir.1990)). In order to state a claim under a serial violation theory, plaintiff must demonstrate that at least one actionable violation occurred within the statute-of-limitation period. *See id.*

■ Plaintiff asserts that the December 10, 1994 "leering" incident is the actionable violation that occurred within the statute-of-limitation period. Plaintiff argues that because that act occurred within the statutory period, the earlier acts of sexual harassment are not barred from consideration. Defendant disputes this contention. Defendant argues that the December 10, 1994 incident did not constitute actionable sexual harassment under Title VII, and for this reason it cannot serve as a violation that "anchors the earlier claims," as explained in *Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir.1998).

Defendant relies first on a magistrate judge's Report and Recommendation Regarding Defendant's Motion[s] for Summary Judgment that is unpublished and unobtainable. *See* Memorandum in Support of Defendant the Children's Museum's Motion for Judgment on the Pleadings, Docket No. 34 at 11.

Defendant next relies on *Lewis v. Gillette Co.*, 22 F.3d 22, 24 (1994), in which the First Circuit affirmed a district court decision that

concluded, as to the plaintiff's harassment claim, that the "gawking" of which Lewis complained was not sufficiently "severe" conduct to constitute actionable harassment "within the meaning of *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)." In *Meritor Savings Bank,* the First Circuit affirmed the lower court's decision on an independent ground but indicated that *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), decided by the Supreme Court while the *Meritor Savings Bank* case was pending on appeal, might affect the determination as to whether or not the conduct complained of in the *Meritor Savings Bank* case was actionable. In *Harris,* the Court explained that the *Meritor* standard "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." 510 U.S. at 21, 114 S.Ct. 367. In *Lewis,* the First Circuit declined to "assess the impact of the reformulated *Meritor* standard, however, because we conclude that plaintiff's evidence was otherwise insufficient to make out the elements of a prima facie case of retaliation." 22 F.3d at 24. Thus, I cannot take either *Meritor* or *Lewis* as decisive of the present case.

Defendant also relies on *Provencher v. CVS Pharmacy, Div. of Melville Corp.* to say that plaintiff is required to demonstrate "that the timely acts are linked to the untimely acts by similarity, repetition or continuity." 145 F.3d 5, 15 (1st Cir.1998). *Provencher,* however, was a different kind of case from that now before this court. During a jury trial, Provencher had the opportunity to proffer evidence to demonstrate that the timely and untimely acts were linked. In the instant case, plaintiff has not been afforded the opportunity to proffer such evidence after clear notice that the motion for judgment on the pleadings was being converted to one for summary judgment. After the parties have in hand the present opinion and order, however, plaintiff will have had clear notice that this court considers itself bound by First Circuit precedent, including *Judge v. City of Lowell,* and in order to avail herself of the continuing violation doctrine and thus withstand any future dispositive motions, she will

need to demonstrate through admissible evidence, and under the summary-judgment standard, that the timely and untimely acts are linked.

Also, defendant asserts that plaintiff may not use the continuing violation doctrine because she was aware of the alleged sexual harassment at the time it occurred. In *Provencher,* the court stated "[e]ven where a plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." 145 F.3d at 14 (citing *Sabree v. United Bhd., of Carpenters and Joiners Local No. 33,* 921 F.2d at 401–02 (1st Cir. 1990)). A critical phrase in this statement is "plaintiff was *or should have been* aware." (Emphasis added.) Thus, if plaintiff fails to proffer evidence sufficient to defeat a determination as a matter of law that she "should have been aware," the applicability of this objective standard defeats her claim despite her testimony that she was not aware. The dispute about whether she was aware in fact is not material under the objective standard and thus becomes an immaterial dispute of historical fact.

On the basis of my examination of the record as a whole in this case, I conclude that the only finding that could be made by a finder of fact correctly applying the controlling legal test is that if plaintiff was indeed being discriminated against by Cummins, which allegation is essential to her claim, then she should have been aware that she was being discriminated against. She has not proffered any factual allegations sufficient to support findings that Cummins was in fact discriminating against her on sexual grounds but she was not aware of that fact and was reasonable in not being aware of that fact.

## VI. Counts III – VI State–Law Claims

In Count III, plaintiff asserts a claim of discrimination that under M.G.L. c. 151B, § 5, must be filed with MCAD within six months of the alleged act of discrimination. Defendant argues that plaintiff failed to file a

timely complaint and is thus precluded from bringing this action.

In Count IV, plaintiff asserts a claim under M.G.L. c. 214 § 1(c), Sexual Harassment.

Defendant argues that because plaintiff failed to file a timely claim with MCAD under M.G.L. c. 151B, § 5, she is barred from bringing an action under M.G.L. c. 214 § 1(c).

In Count V, plaintiff asserts a claim under M.G.L. c. 12, §§ 11H & 11I, MCRA. In Count VI, plaintiff asserts a Massachusetts common-law claim of Negligent Retention and Supervision of Cummins. Defendant argues that, under Massachusetts law, plaintiff is barred from bringing a claim under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, §§ 11H and 11I, that is duplicative of her c. 151B claim. Defendant makes a similar argument as to plaintiff's common law claims of negligent retention and supervision. In response, plaintiff asserts that Fed. R.Civ.P. 8(a) allows her to demand "[r]elief in the alternative or of several different types ..." and recovery under these theories is appropriate should her discrimination claims fail.

In *Mouradian v. General Electric Co.*, the Massachusetts Appeals Court rejected the plaintiff's argument that his failure to comply with the administrative filing requirements of c. 151B should not preclude him from filing a claim under the MCRA. *Mouradian v. General Elec. Co.*, 23 Mass.App.Ct. 538, 503 N.E.2d 1318, review denied, 399 Mass. 1105, 507 N.E.2d 1056 (1987). In *Mouradian*, the Appeals Court stated "... the only 'right[ ] secured by the ... laws of the commonwealth' (the operative words of c. 12 § 11H, in this instance) is the right which could have been enforced under the procedures established by c. 151B. In the circumstances, G .L. c. 12, §§ 11H and 11I, do not create an independent right to vindicate an alleged wrong which might have been the subject of investigation, and possible vindication under G.L. c. 151B, were it not for Mouradian's delay." *Id.* at 543, 503 N.E.2d at 1321. Massachusetts law is clear that the holding in *Mouradian* applies to age discrimination claims. *See Bergeson v. Franchi*, 783 F.Supp. 713, 721 (D.Mass.1992). It is not as clear that *Mouradian* extends to sexual harassment claims. One judge, however, of the United States District Court, has concluded that a plaintiff with a c. 151B sexual harassment claim cannot file a duplicative claim under the MCRA. *See* 783 F.Supp. at 721. The court was persuaded by the "support in analogous state and federal decisions" and the "absence of clear guidance from the Supreme Judicial Court." *Id.*

As to the negligent retention and supervision claim, under Massachusetts law, M.G.L. c. 152, § 4, the Massachusetts Workers' Compensation Act, "provides the exclusive remedy by which an employee can recover damages for personal injuries sustained in the course of and arising out of his or her employment." *Dorn v. Astra USA*, 975 F.Supp. 388, 395 (D.Mass.1997) (citing *Green v. Wyman–Gordon Co.*, 422 Mass. 551, 558, 664 N.E.2d 808, 813 (1996)). Emotional distress "arising out of the employment relationship is a personal injury compensable under the workers' compensation act." *Felinska v. New England Teamsters & Trucking Industry Pension Fund*, 855 F.Supp. 474, 478 (D.Mass.1994) (citing *Foley v. Polaroid Corp.*, 381 Mass. 545, 550, 413 N.E.2d 711 (1980)).

In her negligent retention and supervision claim, plaintiff seeks relief for emotional distress resulting from Cummins' alleged harassment. Because emotional distress is compensable under the Massachusetts Workers' Compensation Act, this claim by plaintiff is one of very doubtful merit, at best.

Before making definitive rulings on any of these state-law claims, however, I must consider whether I should not order a separate final judgment for defendant on all federal-law claims for the reasons explained in Part V of this opinion and decline to take jurisdiction over the state-law claims.

A Case Management Conference will be scheduled for consideration of this question.

### Interlocutory Order

For the foregoing reasons, it is hereby ORDERED:

(1) Defendant's Motion for Judgment on the Pleadings (Docket No. 33) is ALLOWED

as to Counts I and II, and NOT ALLOWED as to Counts III–VI.

(2) Defendant's Motion to Stay Discovery Pending Decision on its Motion for Judgment on the Pleadings (Docket No. 35) is ALLOWED as an assented-to motion.

(3) Plaintiff's Motion to Enlarge Time to August 24, 1998 to Oppose Motion for Judgment on the Pleadings (Docket No. 37) is ALLOWED as an assented-to motion.

(4) A **Case Management Conference** is scheduled for **December 30, 1998, at 2:00 p.m.,** to consider what action the court should take with respect to Counts III–VI. Each party must file, not later than two court-days before that conference, its statement of position on this matter.