Gershengorn, J.
Plaintiff, Michele Goguen (“Ms. Goguen”), brought this action against defendants, Quality Plan Administrators (“QPA”), Dr. Mitchell Pasenkoff (“Dr. Pasenkoff’), and Correctional Medical Services, Inc. (“CMS”). In her complaint, Ms. Goguen alleges that Dr. Pasenkoff sexually harassed her, thereby creating a hostile work environment. Ms. Goguen also alleges violations of G.L.c. 15IB, §§4(1), 4(4), 4(4A), 4(5), and 4(16A) and G.L.c. 214, §1C. Defendants have each filed separate motions for summary judgment based on several different grounds. For the reasons set forth below, defendants’ motions for summary judgment are ALLOWED.
BACKGROUND
The Department of Corrections (“DOC”) has a contract with defendant CMS whereby CMS agrees to provide medical services to inmates within Massachusetts correctional facilities. In turn, CMS has a subcontract with defendant QPA, whereby QPA provides dental services to inmates within the Massachusetts correctional facilities. CMS’s contract with QPA specifically states that CMS “shall not exercise control of any nature, kind or description relating to the maimer or means in which [QPA]’s dentists and other personnel perform dental services or decision at the facilities. [QPA] shall be responsible for the actions of its dentists and other personnel, and [QPA] agrees that its dentists and other personnel shall be subject to the application of the rules and regulations of the medical department of the facilities.”
Plaintiff, Ms. Goguen, a dental assistant, was employed by QPA from July 1994 to January 2, 1997.[2] On March 4, 1996, Ms. Goguen began working at the MCI Shirley correctional facility as a dental assistant to defendant, Dr. Pasenkoff. At all times relevant thereto, Ms. Goguen believed that Dr. Pasenkoff was her supervisor and thus had the authority to discipline and fire her. Ms. Goguen alleges in her complaint that during the course of her employment with Dr. Pasenkoff, he initiated unwelcome verbal conduct of a sexual nature and unwelcome physical conduct toward her. For example, Ms. Goguen contends that Dr. Pasenkoff pressed his pelvis against her, touched her legs, hips and buttocks, and hugged her on numerous occasions. When she protested to this behavior, Dr. Pasenkoff allegedly responded that he “could get [pllaintiff] canned so fast.” Dr. Pasenkoff also allegedly referred to Ms. Goguen as “big boobs,” “fat ass,” and “bony ass,” referred to women as “cunts,” and asked Ms. Goguen about her sex life and commented on his own in a hostile and vulgar manner. Dr. Pasenkoff s behavior toward Ms. Goguen did not occur after she reported this conduct to QPA on August 5, 1996.
Once Ms. Goguen reported this behavior, QPA separated her from Dr. Pasenkoff by placing them at separate facilities. Ms. Goguen was placed at MCI Concord and then three days later, once Dr. Pasenkoff had been transferred, she was returned to MCI Shirley. Ms. Goguen did not work with Dr. Pasenkoff after August 5, 1996. However, Ms. Goguen contends that following her report of harassment, she was subjected to retaliatory remarks and conduct by DOC employees as well as QPA employees, including Dr. Pasenkoff.[3]
By a memorandum dated September 25, 1996, QPA informed Ms. Goguen that after an investigation conducted by Attorney Carol O’Rierdan, they had concluded that Ms. Goguen’s claims of sexual harassment were “unsubstantiated.” Ms. Goguen voluntarily terminated her employment with QPA on January 2, 1997. The next day, Ms. Goguen called QPA and requested that she be given her job back but was informed that the dental assistant position had already been filled. Subsequently, on March 20, 1997, she filed a claim of sexual harassment against QPA, Dr. Pasenkoff, and CMS with the Massachusetts Commission against Discrimination (“MCAD”).
DISCUSSION
Summary judgment shall be granted when there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, therefore, the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
I. Sexual Harassment: Violations of 15IB, §§4(1) (16A), (4A) and (5) Statute of Limitations
G.L.c. 151B provides two largely independent avenues for redress of violations of the antidiscrimination laws of the Commonwealth, one through the MCAD and the other in the courts. Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994) citing Christo v. Edward G. Boyle Ins. Agency, Inc., 402 Mass. 815, 817 (1988). However, pursuant to G.L.c. 15 IB, §9, a plain *290 tiff cannot bring an unlawful discrimination action in Superior Court without first filing with the MCAD within six months of the last alleged discriminatory act. Charland supra. Resort to the court is not available for a complaint within the jurisdiction of the MCAD unless the person claiming to have been the object of unlawful discrimination first makes a timely complaint to that agency. Id.
There is no dispute that the last alleged act of sexual harassment occurred no later than August 5, 1996 and the claim was not filed with the MCAD until March 20, 1997, more than seven months after this last alleged incident. In an attempt to save a claim that is clearly time-barred, Ms. Goguen contends that, as to QPA and CSM, she is entitled to the benefit of the doctrine of equitable tolling, due to their alleged failure to post a notice setting forth employee’s rights under G.L.c. 151B. Furthermore, she alleges that under the continuing violation doctrine, her sexual harassment claims can be linked with her timely retaliation claim. For purposes of clarity, this court will address each of Ms. Goguen’s arguments separately.
Equitable Tolling
Under the doctrine of equitable tolling, where a plaintiff is not on notice that he or she should assert his or her legal rights and where commencing an action would not unduly prejudice the defendant, a court may modify the filing period. Ruffino v. State Street Bank and Trust Co., 908 F.Sup. 1019, 1041 (D.Mass. 1995). It is clear that an employee’s ignorance of his statutory rights, in and of itself, will not toll a statute of limitations. Kale v. Combined Insurance Co. of America, 861 F.2d 746, 752 (1st Cir. 1988). However, it is equally clear that where such ignorance is caused either by misconduct of an employer or by failure of that employer to conspicuously post informational notice, there may be a valid claim for equitable tolling unless, of course, the employee either receives actual notice of his statutory rights or retains an attorney. Id. The presence or absence of a posted notice does not, standing alone, determine whether the limitations period should be tolled, as one must also look to whether the employee had received actual or constructive knowledge through other means. Cano v. United States Postal Service, 755 F.2d 221, 222-23 (1st Cir. 1985).
Although the evidence in the record is not conclusive on the issue of whether there was a notice posted regarding an employees’ statutory rights,[4] for the purposes of this motion, this court will assume that no such posting existed at the time of the incident. Notwithstanding the absence of a posted notice, Ms. Goguen still had or should have had knowledge of her statutory rights. See id. Ms. Goguen denies that she had knowledge of a letter dated October 26, 1994 issued by the commissioner of the DOC to all DOC employees and contract staff, which set forth the DOC’s policy against sexual harassment (Dep. 103). However, she admits that she received a memorandum in September or October of 1996 which outlined QPA’s sexual harassment policy (Dep. 458).
Such a letter is sufficient to provide Ms. Goguen with actual knowledge of her statutory rights, thereby defeating her claim for equitable tolling.[5] See Kale, supra. The last alleged incident of sexual harassment occurred on August 5. 1996. Thus, Ms. Goguen had until February 5, 1997 to file her complaint. Despite having actual knowledge of her statutory rights as early as September of 1996, Ms. Goguen nonetheless neglected to pursue this claim within the applicable period. Accordingly, Ms. Goguen’s sexual harassment claims are time-barred.
Continuing Violation Doctrine
The continuing violation theory saves an otherwise time-barred claim if the plaintiff can show a number of discriminatory acts emanating from the same discriminatory animus, each action constituting a separate wrong under G.L.c. 15IB. Sabree v. United Broth. of Carpenters and Joiners, 921 F.2d 396, 400 (1st Cir. 1990); see also Lynn Teachers Union, Local 1037 v. Massachusetts Commission Against Discrimination, 406 Mass. 515, 520 (1990). For the continuing violation doctrine to apply, there must have been some violation within the statute of limitations period that anchors the earlier claims. Provencher v. CVS Pharmacy, Div. of Melvill Corp., 145 F.3d 5, 14 (1st Cir. 1998). Furthermore, before a plaintiff can reach back and recover for a series of acts outside the limitations period, he must prove a substantial relationship between the acts. Sabree supra at 401.
Where an employee claims sexual harassment and retaliation, the two causes of actions are often factually and legally intertwined. Ruffino v. State Street Bank and Trust Co., 908 F.Sup. 1019, 1040 (D. Mass 1995). However, retaliation is a distinct cause of action, motivated, at least in part, by an intent to punish or rid a workplace of someone who complains of unlawful practices. Id. Unless specific facts suggest otherwise, the factual and legal intersection between the underlying claim and the retaliation is insufficient to revive an otherwise stale claim. Id.
Ms. Goguen is attempting to revive her stale sexual harassment claim by linking it to her retaliation claim. She contends that Dr. Pasenkoff committed a series of acts constituting sexual harassment. She further alleges that, as a result of reporting this sexual harassment, she has been subject to retaliatory acts, not sexual in nature, that have been committed by a different individual. These claims do not allege facts to show that the factual and, legal intersection between the underlying claim and the retaliation is sufficient to revive an otherwise stale sexual harassment claim. See Ruffino supra, see also Lawton v. State Mutual Life Assurance Co. of America, 924 F.Sup. 331, 340 (D. Mass. 1996) (allegation of continuing violation was untenable because plaintiff failed to offer any *291 evidence that the actions were related or motivated by the same discriminatory animus, since the alleged employment decisions were committed by different individuals and for different reasons). Accordingly, Ms. Goguen’s sexual harassment claims, Count I and Count III of her complaint, are time-barred.
II. Sexual Harassment: Violations of G.L.c. 214, §1C
Defendants argue that, because G.L.c. 151B contains an exclusivity provision, they should be granted summary judgment on Count IV of the complaint, which alleges violations of G.L.c. 214, §1C. This Court agrees.
Employees who are victims of sexual harassment by their employers or their employers’ agents have a remedy under G.L.c. 151B, §§4 (16A), 5. Courts generally construe statutes to be consistent with one another and assume that the Legislature was aware of existing statutes when enacting subsequent ones. Green v. Wyman-Gordon Co., 422 Mass. 551, 554 (1996). Thus, courts attempt to interpret harmoniously statutes that address the same subject matter, “so that effect is given to every provision in all of them. ” Id. quoting 2B Singer, Sutherland Statutory Construction §51.02 at 122 (5th ed. 1992).
G.L.c. 151B, §9 provides in pertinent part that “the procedure provided for in this chapter shall, while pending, be exclusive.” This court has interpreted this exclusivity provision to embody a legislative intent to subject “all discrimination claims to some administrative scrutiny.” Green supra quoting Charlan v. Muzi Motors, Inc., 417 Mass. 580, 585 (1994). Accordingly, a plaintiff may not evade the procedural requirements of G.L.c. 15IB by recasting a claim as a violation of G.L.c. 214, §1C. In this case, because G.L.c. 151B remedies are available to Ms. Goguen, the exclusivity provision of the statute bars her c. 214, §1C claim set forth in Count IV of her complaint.
III. Retaliation: Violations of c. 151B, §4(4)
In Count II of her complaint, Ms. Goguen alleges that the defendants’ conduct represents retaliation in violation of G.L.c. 15IB, §4(4). This provision makes it unlawful for “any person, employer, labor organizer or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.” G.L.c. 15IB, §4(4).
To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in protected conduct under federal or Massachusetts law; (2) she suffered adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir. 1991). At a minimum, there must be competent evidence that the alleged retaliator knew of the plaintiffs protected activity and that a retaliatory motive played a part in the adverse employment action alleged. Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994).
Once the plaintiff has made a prima facie showing, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. McMillan v. Mass. Society for the Prevention of Cruelty to Animals, 140 F.3d 288, 309 (1st Cir. 1998). If the defendant meets his burden, the plaintiff must show that the defendant’s proffered reason was not, in fact, the real reason for the decision and that the decision was the result of the defendant’s retaliatory animus. Id.
There is no dispute that by filing the complaint in March of 1997, Ms. Goguen had engaged in protected conduct. Thus, to survive this motion, Ms. Goguen must show that the allegedly retaliatory acts that she relied on to support her complaint were in fact adverse employment decisions that were causally related to the filing of the MCAD complaint. See Connell supra. The burden then shifts to the defendants to assert a non-discriminatory reason for their actions. See id. Ms. Goguen must then provide sufficient evidence that defendants’ stated reasons for its employment decision were pretext. See id. As grounds for this retaliation claim, Ms. Goguen alleges that (1) Dr. Levine, her supervisor, lost her paperwork, (2) Dr. Levine made her feel like she was “nothing,” (3) Dr. Levine told her that he would make her drive all over the state if she would not work with Dr. Pasenkoff, and (4) QPA made her drive to Concord for three days after reporting the incidents (Dep. 391-93).
Regarding Ms. Goguen’s first allegation, this court finds nothing in the record, aside from mere speculation, to show that Dr. Levine lied about losing certain documents and therefore that such an action constituted an adverse employment action. In fact, in her deposition, Ms. Goguen admitted that she was not sure that Dr. Levine had lied about losing these documents, but “that is how is seemed to [her] (Dep. 395).” See Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989) (deposition testimony containing bare assertions and conclusions regarding understanding, beliefs, and assumptions is not enough to withstand a well pleaded motion for summary judgment). Even if this did constitute an adverse employment action, Ms. Goguen has still failed to present evidence of any causal connection between this incident and the filing of the MCAD complaint. Connell supra at 1179. It is simply not enough that this alleged incident occurred after the filing of the MCAD complaint, as plaintiff must assert some causal connection between the filing of the complaint and the adverse employment action. See id. Having failed to do so, Ms. Goguen has not presented evidence sufficient to make out a claim for a jury. Lewis supra at 24.
*292 As further grounds for her retaliation claim, Ms. Goguen alleges that on several occasions Dr. Levine made comments that made her “feel like nothing. ” This assertion is simply not substantial enough to constitute a change in working conditions that created the kind of material disadvantage that is a predicate for a finding of unlawful retaliation. Bain v. City of Springfield, 424 Mass. 758, 766 (holding that it did not constitute retaliation where the mayor acted coldly toward plaintiff or where his body language betokened hostility toward her because such behavior constitutes “the kind of subjective and intangible impressions that must not be considered in making out a case under the statute”).
Ms. Goguen also contends that, by “threatening” that she drive approximately 2 V2 hours to another site as an alternative to working with Dr. Pasenkoff, Dr. Levine was retaliating against her for filing the MCAD complaint. This “threat,” which was conceivably given in an attempt to temporarily remedy a bad situation, never materialized. Accordingly, assuming for a moment that Ms. Goguen thought that she would be subject to a lengthy commute, this never occurred. She did not suffer a change in working conditions which materially disadvantaged her, and therefore, as to this incident, she cannot make a prima facie showing of retaliation. See MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996).
Lastly, Ms. Goguen asserts that QPA committed a retaliatory act by temporarily placing her at another site after she had reported the sexual harassment.[6] In her deposition testimony, Ms. Goguen admitted that, after three days, Dr. Pasenkoff was moved, and she was relocated back to her original location. Such a temporary change in employment made in an attempt to deal with Ms. Goguen’s allegations of sexual harassment certainly does not constitute the kind of material disadvantage that is the predicate for a finding of unlawful retaliation. Id. In light of the foregoing analysis, Ms. Goguen has failed to establish a prima facie case for the unlawful retaliation.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motions for summary judgment be ALLOWED.[7]

Although employed by QPA, Ms. Goguen contends that CMS did direct and control her with regard to some of her job duties. She also contends that CMS had the authority to affect how she was paid because her wages were paid to QPA based on CMS's time clock, and CMS established her holiday time and influenced how much she could be paid. Additionally, Ms. Goguen alleges that CMS had the authority to direct and control dentists and dental assistants with regard to workplace conduct.

On December 11, 1996, Ms. Goguen and Dr. Pasenkoff were both present at a large meeting. Although admitting that they had no contact, Ms. Goguen alleges Dr. Pasenkoff and other QPA employees at his table were looking at her and laughing.

In Ms. Goguen’s deposition, she stated that she did not recall receiving any information from QPA, CMS, or DOC about any sexual harassment policy prior to September of 1996. However, nowhere in the record does she mention whether a posting actually existed (Dep. 102-03). Moreover. Dr. Pasenkoff stated that he did not specifically remember whether the Department of Labor poster in his office explained the sexual harassment policy (Dep. 205-07).

Moreover, at the very latest, Ms. Goguen knew or should have known that she had been sexually harassed when she complained about Dr. Pasenkoff's conduct on August 5, 1996. See Desrosiers v. The Great Atlantic & Pacific Tea Co., Inc., 885 F.Sup. 308, 312-13 (D.Mass. 1995) (plaintiff must have been on notice of her claim because she notified her supervisors).

Ms. Goguen testified that her commute to her usual site in Shirley was 45 minutes, whereas her commute to Concord, the temporary site, was an hour (Dep. 415).

The defendants have offered many alternative arguments in support of their motions for summary judgment. Because the arguments discussed provide a sufficient basis for allowing the motions, this court need not address all of the alternative arguments.