RICHARD PONTREMOLI *vs.* SPAULDING REHABILITATION
HOSPITAL.[1]

No. 99-P-394.

Suffolk. November 14, 2000. - May 23, 2001.

Present: PORADA, LENK, & DUFFLY, JJ.

*Practice, Civil,* Complaint, Motion to dismiss. *Employment,* Discrimination,
Termination, Retaliation.

A complaint alleging that the plaintiff's employer terminated him in retaliation
for his refusal to falsely implicate a co-worker in a purported workplace
theft stated a claim for which relief could be granted, where the facts al-
leged, if believed, demonstrated activity that was covered by G. L. c. 151B,
and subjected the plaintiff to an adverse employment action supporting a
claim for retaliatory termination under G. L. c. 151B, § 4(4) and (4A).
[624-626]

CIVIL ACTION commenced in the Superior Court Department on
May 1, 1998.

The case was heard by *John C. Cratsley,* J., on a motion to
dismiss.

*William F. Green* for the plaintiff.

*John J. Reardon* for the defendant.

DUFFLY, J. Richard Pontremoli was fired in October, 1996, by
Spaulding Rehabilitation Hospital (hospital), where he had
worked as a cook since 1989. Pontremoli's complaint alleges
that the hospital terminated him in retaliation for his refusal to
falsely implicate a co-worker in a purported workplace theft,
and thus violated G. L. c. 151B, § 4. The hospital's motion to
dismiss the complaint, for failing to allege protected activity
that was linked to, or that occurred prior to, his termination,

---

[1] In the caption of the complaint, the defendant is further identified as "[a]
[m]ajor [a]ffiliate of Partners Health Care Systems, Inc." The body of the
complaint alleges on information and belief that the latter corporation is the
sole owner of Spaulding Rehabilitation Hospital.

was allowed by a judge of the Superior Court. Pontremoli appeals from the dismissal of his complaint and the denial of his motion for reconsideration. We reverse.

*Background.* We first relate the details of Pontremoli's complaint, which generally asserts that he was terminated in connection with co-worker George Motta's claims of discrimination and retaliation by the hospital. The complaint states that on August 9, 1995, Motta filed a discrimination claim with the Massachusetts Commission Against Discrimination (MCAD) alleging that he had been denied a promotion by the hospital because he is Hispanic. In subsequent claims before the MCAD, Motta averred retaliation by the hospital because of the filing of his discrimination complaint and complained of onerous conduct against him by Scott Danico, the hospital's food service director. Pontremoli's complaint further alleged that Pontremoli was an "honest and dedicated employee" who, during his period of employment, had performed his duties in an exemplary manner (as evidenced by consistently positive performance reviews and by a promotion from line cook to first cook) and was aware of Motta's actions against the hospital. It was "common knowledge" in the food service department that Motta had filed the claims against the hospital and that Danico had been openly hostile toward Motta after doing so.

On October 12, 1996, Pontremoli and Motta left work together to socialize at a local establishment after their shift. Pontremoli carried some cans of soda that he had purchased prior to work; Motta carried dirty laundry from work in an old cocoa box. On the way to Pontremoli's car, he and Motta were approached by a hospital security guard who inquired whether they were allowed to take the items they were carrying. Pontremoli responded that the items were their own property, and the security guard told them that they were free to go. The guard did not inspect what they were carrying, ask them to return to the hospital or accuse them of theft. Later that day, Danico called Pontremoli at home and informed him that he was being suspended from his job for the theft of soda from the hospital. Pontremoli denied having stolen anything.

In a subsequent meeting, as part of the hospital's "investigatory" process concerning the theft allegation, Pontremoli reiterated that he had purchased the soda prior to work. He also stated that Motta had been carrying dirty laundry in the cocoa box on the date in question. On October 21, 1996, Pontremoli was terminated for theft. He then filed a grievance, pursuant to the hospital's internal procedures, seeking reversal of his termination, and thereafter appeared at several grievance hearings. During these proceedings Danico, on one or two occasions, asked to speak to Pontremoli "off the record." On one of these occasions, Danico and Kathleen Smith, Vice President of Human Resources, were both present when Danico asked to speak with Pontremoli alone, whereupon Smith left the room. He then asked Pontremoli if "there is anything you would like to say to make me change my mind." Pontremoli told Danico that he could only reiterate that he was not a thief and had not stolen soda from the hospital. Following the grievance proceeding, Pontremoli's termination was affirmed.

*Failure to state a claim.* When evaluating the legal sufficiency of a complaint under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), it is well settled that (1) the plaintiff's factual allegations must be taken as true; and (2) all reasonable inferences that can be drawn therefrom must be made in favor of the plaintiff. See *Eyal* v. *Helen Bdcst. Corp.*, 411 Mass. 426, 429 (1991). "It is familiar doctrine that a complaint can be dismissed for failure to state a claim for which relief can be granted only if a reading of the complaint establishes beyond doubt that the facts alleged . . . do not add up to a cause of action which the law recognizes." *Municipal Light Co. of Ashburnham* v. *Commonwealth*, 34 Mass. App. Ct. 162, 166, cert. denied, 510 U.S. 866 (1993). See *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). "Nor should a complaint be dismissed because it asserts a new theory of liability . . . ." *New England Insulation Co.* v. *General Dynamics Corp.*, 26 Mass. App. Ct. 28, 30 (1988).

Pontremoli's complaint seeks relief under subsection 4A of c. 151B, § 4, which provides that it is unlawful "[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or

protected by this chapter,[2] or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter." G. L. c. 151B, § 4(4A), inserted by St. 1989, c. 722, § 14. A claim based on these provisions is commonly called a "retaliation claim," even though the statute does not use this term. See *Bain* v. *Springfield,* 424 Mass. 758, 765 (1997). "To succeed on claims of retaliatory discharge and retaliatory harassment, a plaintiff must establish the basic fact that he was subjected to an adverse employment action *because* of his protected activity" (emphasis original). *Lewis* v. *Gillette, Co.,* 22 F.3d 22, 24 (1st Cir. 1994). Compare *MacCormack* v. *Boston Edison Co.,* 423 Mass. 652, 662 (1996).

Based on facts alleged by Pontremoli, reasonable inferences may be drawn that termination proceedings were instituted against Motta and Pontremoli because the hospital was looking for a pretext to fire Motta. The opportunity arose when both were seen carrying, in full view, an old cocoa box and cans of soda, after Motta had filed discrimination and retaliation claims against the hospital. It may be inferred that the security guard, who questioned them but did not ask to look into the box, immediately reported these facts to Danico or to someone who reported to Danico. Danico contacted Pontremoli by telephone that same afternoon and suspended him. Although Pontremoli told Danico that the soda was his, Pontremoli, a good and honest worker with an unblemished record, was terminated. Danico's later invitation to say something that would "change [his] mind," during at least one and perhaps two of the grievance proceedings, about an event that on its face did not require prolonged discussion once explained, and that served no legitimate purpose by being "off the record," permits the reasonable inference, favorable to Pontremoli, that all along Danico's actions were calculated to intimidate and coerce Pontremoli into falsely implicating Motta. Pontremoli's persistent

---

[2]This chapter makes it unlawful for an employer to discriminate against an employee on the basis of, among other classifications, "race, color . . . national origin . . . or ancestry," including "discriminat[ion] against such individual in compensation or in terms, conditions or privileges of employment . . . ." G. L. c. 151B, § 4(1), as amended through St. 1989, c. 516, § 4.

support of Motta's claims of innocence negated the hospital's nondiscriminatory reason for terminating Motta. In this way, Pontremoli aided and encouraged Motta's right to be free from retaliation by the hospital.[3]

If believed, the alleged facts demonstrate activity that was covered by G. L. c. 151B, and subjected Pontremoli to an adverse employment action supporting a claim for retaliatory termination under subsections 4 and 4A of G. L. c. 151B, § 4.[4] Compare *Melnychenko* v. *84 Lumber Co.*, 424 Mass. 285, 295 (1997). We reverse the judgment of dismissal.

*So ordered.*

---

[3]The judge pointed out below, and the hospital echoes on appeal, that the termination preceded, rather than followed, Danico's alleged invitation to Pontremoli to implicate Motta in the theft. Thus, the theory goes, there was no retaliation because the termination did not *result from* Pontremoli's response to the invitation (i.e., his refusal to turn on Motta). The theory does not persuade us because Pontremoli's retention, it may be inferred, was contingent upon his cooperation with his employer. The required "adverse employment action [occurring] because of [Pontremoli's] protected activity," *Lewis* v. *Gillette, Co.*, 22 F.3d at 24, was not the initial termination but the subsequent decision affirming it.

[4]The facts as alleged could also support a claim under subsection 4 of G. L. c. 151B, § 4, which prohibits retaliation against a "person because he has opposed any practices forbidden under this chapter." See, for example, subsection 5 of G. L. c. 151B, § 4, providing that is an unlawful practice "[f]or . . . an employer or an employee . . . to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." "It is not fatal to the complaint that [the statute in question] was not specifically pleaded. . . . '[A] complaint is not subject to dismissal if it would support relief on *any* theory of law' (emphasis in original). *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 89 (1979). Nor does the failure of the parties to address the statute prohibit us from considering it," *Ourfalian* v. *Aro Mfg. Co.*, 31 Mass. App. Ct. 294, 298 n.5 (1991), although we need not do so, see *Foley* v. *Lowell Sun Publishing Co.*, 404 Mass. 9, 11 (1989).